[No. H035737. Sixth Dist. Jan. 31, 2013.]

DIANE MARIE MINISH, Plaintiff and Appellant, v.
HANUMAN FELLOWSHIP et al., Defendants and Respondents.

**COUNSEL**

Law Office of Mitchel J. Ezer and Mitchel J. Ezer for Plaintiff and Appellant.

Hayes, Scott, Bonino, Ellingson & McLay, Mark G. Bonino; Burrow & Shimane and Lance Burrow for Defendants and Respondents.

**OPINION**

**RUSHING, P. J.—**

## I. STATEMENT OF THE CASE

Plaintiff Diane Marie Minish filed an action against the Hanuman Fellowship (Hanuman), Mount Madonna Institute, and the Mount Madonna Center seeking compensatory and punitive damages for personal injuries and other losses she sustained when she fell off a forklift allegedly due to defendants' negligence. Defendants answered, and as an affirmative defense alleged that plaintiff was covered by workers' compensation which provided her exclusive remedy. Defendants later sought summary judgment on that ground, and plaintiff sought summary adjudication that she was not covered by workers' compensation. The court granted defendants' motion and denied plaintiff's motion. The court applied the doctrine of judicial estoppel to bar plaintiff from claiming that she was not covered by workers' compensation and entered judgment for defendants.

On appeal, plaintiff claims the court erred in applying judicial estoppel and in finding that she was subject to workers' compensation. She further claims the court erred in overruling her hearsay objection to statements contained in documents that the court had judicially noticed.

We reverse the judgment.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when all of the papers submitted show there are no triable issues of any material fact and the moving party is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

A defendant may move for summary judgment if the action has no merit. (§ 437c, subd. (a).) A defendant meets the initial burden of showing a cause of action is without merit if the defendant shows that one or more elements of the cause of action cannot be established or, as in this case, there is a complete defense to a cause of action or the complaint. (*Id.*, subd. (p)(2).) Once the defendant makes such a showing, the burden shifts to the plaintiff to produce evidence demonstrating the existence of a triable issue of material fact. (*Ibid.*; *Aguilar v. Atlantic Richfield Co., supra*, 25 Cal.4th at p. 849.)

On appeal from a summary judgment, our task is to independently determine whether an issue of material fact exists and whether the moving party was entitled to summary judgment as a matter of law. (*Brantley v. Pisaro* (1996) 42 Cal.App.4th 1591, 1601 [50 Cal.Rptr.2d 431].) "We independently review the parties' papers supporting and opposing the motion, using the same method of analysis as the trial court. Essentially, we assume the role of the trial court and apply the same rules and standards." (*Kline v. Turner* (2001) 87 Cal.App.4th 1369, 1373 [105 Cal.Rptr.2d 699].) We apply the same three-step analysis required of the trial court. First, we identify the issues framed by the operative complaint and answer since it is these allegations to which the motion must respond. Second, we determine whether the moving party's showing establishes facts which negate the opponent's claim and justifies a judgment in the moving party's favor. When the moving party makes a prima facie showing, the third and final step is to determine whether the opposition demonstrates the existence of a triable issue of material fact. (*Hamburg v. Wal-Mart Stores, Inc.* (2004) 116 Cal.App.4th 497, 503 [10 Cal.Rptr.3d 568].)

In performing these steps, we view the evidence in the light most favorable to the party opposing the motion, liberally construe the opposing party's evidence, strictly construe the moving party's evidence, and resolve all doubts in favor of the opposing party. (*Johnson v. American Standard, Inc.* (2008) 43 Cal.4th 56, 64 [74 Cal.Rptr.3d 108, 179 P.3d 905]; *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 [107 Cal.Rptr.2d 617, 23 P.3d 1143].)

### III. Procedural History

### A. The Second Amended Complaint and Answer

In her second amended complaint for negligence, plaintiff alleged that she was "at defendants' property" on September 16, 2006. At defendants' direction, she climbed onto the prongs of a forklift, the operator raised the prongs into the air and drove over uneven ground into a hole, and she was thrown off and onto the ground, where she sustained serious injuries. She sought compensatory and punitive damages.[1]

In their answer, defendants alleged as an affirmative defense that plaintiff's action was barred by the exclusive remedy provisions of the Workers' Compensation Act (the Act) (Lab. Code, §§ 3600, 3602, subd. (a)).[2]

### · B. Defendants' Motion for Summary Judgment

In their motion, defendants claimed the undisputed evidence established that plaintiff was covered by the Act, and therefore she was bound by the exclusive remedy provisions. In particular, defendants asserted that (1) before the accident, Hanuman's board, under the authority of section 3363.6, had declared its volunteers to be employees for purposes of workers' compensation, and thereafter, Hanuman's workers' compensation policy covered volunteers and employees;[3] (2) when plaintiff was injured, she was a covered volunteer/employee; (3) after the accident, plaintiff filed a workers' compensation claim; and (4) plaintiff received substantial workers' compensation benefits.

---

[1] After plaintiff filed her first amended complaint, defendants answered and then filed a motion for summary judgment. That motion was denied without prejudice. Plaintiff then filed her second amended complaint.

[2] Labor Code section 3600, subdivision (a) provides, in pertinent part, "Liability for the compensation provided by this division, in lieu of any other liability whatsoever to any person . . . shall, without regard to negligence, exist against an employer for any injury sustained by his or her employees arising out of and in the course of the employment. . . ."

Labor Code section 3602, subdivision (a) provides, in pertinent part, "Where the conditions of compensation set forth in Section 3600 concur, the right to recover compensation is, except as specifically provided in this section and Sections 3706 and 4558, the sole and exclusive remedy of the employee or his or her dependents against the employer. . . ."

All unspecified statutory references are to the Labor Code.

[3] Section 3363.6 provides: "(a) Notwithstanding Sections 3351, 3352, and 3357, a person who performs voluntary service without pay for a private, nonprofit organization, as designated and authorized by the board of directors of the organization, shall, when the board of directors of the organization, in its sole discretion, so declares in writing and prior to the injury, be deemed an employee of the organization for purposes of this division while performing such service. [¶] (b) For purposes of this section, 'voluntary service without pay' shall include the performance of services by a parent, without remuneration in cash, when rendered to a cooperative parent participation nursery school if such service is required as a condition of participation in the organization. [¶] (c) For purposes of this section, 'voluntary service without

To establish that Hanuman had converted its volunteers to volunteer/ employees for purposes of workers' compensation under section 3363.6, defendants submitted copies of minutes from meetings of the board of directors of the Mount Madonna Center, and an excerpt from a meeting on April 21, 1987, that read, "It should be noted that workman's compensation is in effect for all workers and volunteers in case of accidents during work hours."

To establish that Hanuman's volunteers were covered on the day of the accident, defendants submitted a copy of Hanuman's workers' compensation insurance policy which included a volunteer endorsement.

To establish that plaintiff had filed a workers' compensation claim, defendants submitted (1) a Workers' Compensation Appeals Board (WCAB) form DWC-1 signed by both plaintiff and Robert Thayer, her workers' compensation attorney, in which she stated that she fell "at work"; (2) a "Venue Authorization" form signed by plaintiff authorizing Robert Thayer to file her workers' compensation case at the San Jose WCAB; (3) a "Notice of Application" for adjudication of a workers' compensation claim and the "Application," signed by plaintiff, which described her as a "volunteer" and stated that she was injured when she "fell at work"; and (4) an additional "Petition for Benefits" to the WCAB filed by Gary C. Nelson, plaintiff's other workers' compensation attorney, which asserted that plaintiff "was injured while volunteering" and alleged that Hanuman was guilty of serious and willful misconduct.[4]

To establish that plaintiff had received workers' compensation benefits, defendants submitted the declaration of Monte Wilson, defendants' attorney in plaintiff's WCAB case. He asserted that defendants had not contested plaintiff's claim. He further stated that as of September 30, 2008, plaintiff had received $172,589.02 in medical benefits and $78,839.99 in temporary disability benefits from the State Compensation Insurance Fund (the Fund) under defendants' policy.

Finally, to establish that plaintiff was a covered volunteer under the Act, defendant noted (1) the statements in plaintiff's various workers' compensation pleadings to the effect that she was injured while volunteering at work

---

pay' shall include the performance of services by a person who receives no remuneration other than meals, transportation, lodging, or reimbursement for incidental expenses."

[4] The court granted defendants' request for judicial notice of the application and the petition. It denied their request concerning a State Compensation Insurance Fund document entitled "Employer's Report of Occupational Injury or Illness," identifying Hanuman as the employer and plaintiff as the employee and describing the nature of her injuries and the circumstances under which they occurred.

and (2) the allegations in plaintiff's initial and first amended complaints that she "volunteered" at the Mount Madonna Center on the day of the accident and was injured while doing so. Defendants argued that plaintiff's statements and allegations constituted admissions that she was a covered volunteer. Defendant further argued that plaintiff, having successfully asserted that she was a covered volunteer in her workers' compensation case, should be judicially estopped from asserting in her lawsuit that she was *not* a covered volunteer.

## C. Plaintiff's Opposition

In opposition, plaintiff claimed that the minutes of Hanuman's board meeting did not satisfy the requirements of section 3363.6 because she was not personally identified by name and declared to be a volunteer/employee. Thus, the Act did not apply.[5] Plaintiff further asserted that whether she was a covered volunteer on the day of the accident was a disputed issue of fact. In this regard, she submitted evidence that Hanuman's residents are expected to volunteer their services for a certain number of hours per week, but she was not a resident. She submitted evidence that Hanuman regularly compiled a list of volunteers for its compensation carrier, and Hanuman did not add plaintiff's name to the list until after the accident was reported to its carrier. She submitted her deposition testimony, in which she asserted that she never considered herself a volunteer, certainly not on the day she was injured, and she was unaware that she had ever been considered a volunteer. She explained that on the day of the accident, she went to visit a friend who was ill. She did not go to perform any voluntary services, but when asked to go get somebody at the other end of a field, she agreed to do so.

Plaintiff argued against applying judicial estoppel. Concerning the workers' compensation claim, she notes that she was hospitalized immediately after the accident with severe injuries. She submitted evidence showing that days after the accident, defendants' carrier and Hanuman's claims administrator with the Fund were notified about the accident.[6] At her deposition, plaintiff testified that without her knowledge or consent, defendants initiated, prepared, and submitted the claim for benefits on her behalf. Plaintiff further testified that she did not think she should have received medical benefits from

---

[5] In addition to her opposition, plaintiff filed a motion for summary adjudication in which she asserted the same claim and sought a determination that as a matter of law, she did not qualify as an employee and therefore was not subject to the exclusive remedy provisions in the Act.

[6] Plaintiff submitted a notice dated September 27, 2006, from Hanuman's claims administrator at the Fund that had a claim number and that advised plaintiff that workers' compensation liability has been accepted but that further investigation was needed in order to commence payment of temporary disability and medical care and expenses.

the Fund because she had not been consulted or given any input concerning the initiation of a workers' compensation case. Consequently, she hired attorneys to figure out how this had happened and to change her status. She said her attorney, Mr. Thayer, had her sign a number of blank forms. She also testified that she tried to return the benefits she had received, sought transfer of her care from Hanuman's carrier to her own private health care insurer, and complained that the workers' compensation claim had been fraudulently initiated. Lastly, she noted that the WCAB had not as yet made any finding concerning whether she qualified as a volunteer/employee, whether the accident was covered, or whether Hanuman's carrier was obligated to pay benefits.

## D. The Trial Court's Ruling

The court applied the doctrine of judicial estoppel. According to the court, the undisputed evidence established that plaintiff had successfully obtained workers' compensation benefits by asserting that she was a volunteer/ employee covered under the Act. Accordingly, the court estopped her from claiming that she was not subject to workers' compensation and the exclusive remedy provisions of Act. In reaching this conclusion, the court rejected plaintiff's claim that the Act was inapplicable because defendants had failed to comply with section 3363.6 by not specifically naming her as a covered volunteer. The court ruled that the statute did not require such specificity.

## IV. Plaintiff's Contentions

Plaintiff contends that the court erred in applying judicial estoppel because the undisputed evidence did not establish all of the requisite elements. Plaintiff contends that the court erred in ruling that section 3363.6 did not require Hanuman's board to name her and specifically declare her to be a covered volunteer. She further contends that she could not have become a covered volunteer because she never agreed to that status. Lastly, she contends that the court erred in denying her hearsay objection to the contents of her workers' compensation pleadings and in considering the contents as evidence that she was a covered volunteer/employee.

## V. Judicial Estoppel

### A. Applicable Principles

The doctrine of judicial estoppel, sometimes called the doctrine of " ' "preclusion of inconsistent positions" ' " (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 181 [70 Cal.Rptr.2d 96] (*Jackson*)) precludes a

party from obtaining an advantage by asserting one position, and then seeking a second advantage by asserting an incompatible position. (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co.* (2005) 36 Cal.4th 412, 422 [30 Cal.Rptr.3d 755, 115 P.3d 41] (*MW Erectors*).) The doctrine is applied " ' "to prevent a party from changing its position over the course of judicial proceedings when such positional changes have an adverse impact on the judicial process. . . . 'The policies underlying preclusion of inconsistent positions are "general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings." ' . . . Judicial estoppel is 'intended to protect against a litigant playing "fast and loose with the courts." ' " ' [Citation.] 'It seems patently wrong to allow a person to abuse the judicial process by first [advocating] one position, and later, if it becomes beneficial, to assert the opposite.' [Citation.]" (*Jackson, supra*, 60 Cal.App.4th at p. 181; see *The Swahn Group, Inc. v. Segal* (2010) 183 Cal.App.4th 831, 841 [108 Cal.Rptr.3d 651] (*Swahn*).)[7]

However, "numerous decisions have made clear that judicial estoppel *is an equitable doctrine*, and its application, even where all necessary elements are present, is discretionary." (*MW Erectors, supra*, 36 Cal.4th at p. 422; see *People v. Castillo* (2010) 49 Cal.4th 145, 155–156 [109 Cal.Rptr.3d 346, 230 P.3d 1132]; *Aguilar v. Lerner* (2004) 32 Cal.4th 974, 986–987 [12 Cal.Rptr.3d 287, 88 P.3d 24] (*Aguilar*).) Moreover, because judicial estoppel is an extraordinary and equitable remedy that can impinge on the truth-seeking function of the court and produce harsh consequences, it must be "applied with caution and limited to egregious circumstances" (*Jogani v. Jogani* (2006) 141 Cal.App.4th 158, 170, 175, 177 [45 Cal.Rptr.3d 792] (*Jogani*); *Gottlieb v. Kest* (2006) 141 Cal.App.4th 110, 132 [46 Cal.Rptr.3d 7] (*Gottlieb*)), that is, " ' "when a party's inconsistent behavior will otherwise result in a miscarriage of justice" ' " (*Daar & Newman v. VRL International* (2005) 129 Cal.App.4th 482, 490–491 [28 Cal.Rptr.3d 566]).

"The doctrine applies when '(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake.' [Citations.]" (*Aguilar, supra*, 32 Cal.4th at pp. 986–987; accord, *MW Erectors, supra*, 36 Cal.4th at p. 422.)

A court may grant summary judgment based on judicial estoppel "where none of the facts material to the court's decision to apply judicial estoppel are disputed." (*Drain v. Betz Laboratories, Inc.* (1999) 69

---

[7] (See *Jackson, supra*, 60 Cal.App.4th at pp. 182–183 [distinguishing judicial estoppel from equitable and collateral estoppel].)

Cal.App.4th 950, 959, fn. 8 [81 Cal.Rptr.2d 864] (*Drain*); *Levin v. Ligon* (2006) 140 Cal.App.4th 1456, 1467 [45 Cal.Rptr.3d 560].) In other words, the court may apply the doctrine where there are no triable issues of fact concerning any of the requirements. When a trial court does so, we independently determine whether there were triable factual issues. (*Kelsey v. Waste Management of Alameda County* (1999) 76 Cal.App.4th 590, 598 [90 Cal.Rptr.2d 510].)

## B. The Court's Findings

In applying the doctrine, the court found that plaintiff had asserted two inconsistent positions in separate judicial or quasi-judicial proceedings. In her WCAB pleadings, she asserted that she was a volunteer who was injured at work or while volunteering; but in the second amended complaint, she simply alleged that she was injured while on the property. Next, the court found that plaintiff's receipt of substantial benefits from the Fund established that she had successfully asserted her first position. Lastly, the court found that plaintiff had not asserted that position due to fraud, ignorance, or mistake.

## C. The Element of Success

We hold that the trial court erred in concluding that the receipt of workers' compensation benefits established that plaintiff had successfully asserted the position she took in her WCAB pleadings.

In *Jackson, supra,* 60 Cal.App.4th 171, an injured county safety police officer filed a workers' compensation claim which he later settled with his county employer by a stipulation in which both parties agreed, among other things, that the employee's disability required a totally stress-free work environment. A workers' compensation judge accepted the stipulation and expressly incorporated its provision into the award. Thereafter, given the work restriction, the county concluded that the employee could not resume his position as a safety police officer because no accommodation could render it stress free. The employee later sued the county under the Americans with Disabilities Act of 1990 (ADA; 42 U.S.C. § 12101 et seq.) for failing to accommodate his disability. (60 Cal.App.4th at pp. 174–178.) In upholding summary judgment for the county based on judicial estoppel, the court noted that the employee's stipulation that he needed a stress-free work environment was inconsistent with his later position that he could perform the essential functions of a safety police officer. The court further noted that the employee was successful in asserting his position in the workers' compensation case because he had signed the stipulation, and the workers' compensation judge had adopted it in making the award. (*Id.* at p. 190.)

Unlike in *Jackson*, the record here contains no evidence that the WCAB ever considered plaintiff's claim, let alone made a determination in which it adopted or accepted as true the position plaintiff asserted in her claim. Although it does not appear that defendants and their insurance carrier ever challenged plaintiff's claim or petition, the fact remains that there is no evidence the WCAB took any action on the claim or petition. Absent undisputed evidence of plaintiff's success in asserting some position to the WCAB, the doctrine could not properly be invoked to grant summary judgment. (E.g., *Gottlieb, supra*, 141 Cal.App.4th 110, 137 [initial position neither adopted nor accepted by first tribunal]; *Jogani, supra*, 141 Cal.App.4th 158, 172 [same]; *Swahn, supra*, 183 Cal.App.4th at pp. 844–851 [same].)

Defendants claim that plaintiff clearly was successful because *the Fund* paid substantial benefits "as a result of the assertion by [plaintiff] that she was entitled to such benefit." They argue that the element of success "does not necessarily require that the party has prevailed on the entire suit or that judgment was entered. Instead, acceptance of the position by the tribunal will suffice." We are unpersuaded.

Defendants' claim conflates the Fund and the WCAB. However, the Fund is not a judicial or quasi-judicial tribunal charged with authority to make binding determinations of workers' compensation claims. Moreover, the record does not establish, and it is certainly not undisputed, that the Fund paid benefits as a result of *plaintiff's* WCAB claim.

Defendants submitted no evidence showing that plaintiff initiated the payments by the Fund for her medical expenses or that plaintiff filed any claims with the Fund or had any direct dealings with it concerning her right to benefits. On the other hand, there is evidence that within days of the accident, while plaintiff was in the hospital and long before she filed the WCAB claim or even hired an attorney, the Fund was advised of plaintiff's accident and injuries, it assigned her a claim number, and it accepted liability. Moreover, in her deposition, plaintiff testified that defendants filed the claim with the Fund that initiated the payment of benefits, and it did so without her knowledge or input.[8] Thus although in the abstract the payment of benefits by the Fund may be consistent with the implied assertion of coverage in plaintiff's WCAB claim, those payments by themselves do not establish that *the WCAB*—the relevant tribunal for purposes of analyzing the element of success—ever adopted or accepted as true the position plaintiff asserted in her claim as true. Indeed, defendants conceded below that the WCAB claim was still pending.

---

[8] For this reason, the fact that defendants and their carrier did not oppose plaintiff's subsequent WCAB claim or object to her receipt of benefits from the Fund does not suggest that the WCAB adopted or accepted as true the position plaintiff asserted in her WCAB claim.

Defendants also cite *Drain, supra,* 69 Cal.App.4th 950 for the proposition that "[t]he approval of a stipulation by a court will qualify as 'success' for the purpose of judicial estoppel."

In *Drain*, an injured employee settled his workers' compensation claim by entering an agreement with the employer in which the parties agreed that there were certain injuries, there had been no harassment or discrimination, and, upon acceptance of the agreement, the employer would be released from any and all claims. The compensation referee accepted the agreement. The employee then sued under the California Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.), claiming racial discrimination. (*Drain, supra,* 69 Cal.App.4th at pp. 953–955, 957.) As in *Jackson*, the reviewing court upheld application of the doctrine to preclude the subsequent claim, finding that the admission in the agreement precluded an inconsistent claim of racial discrimination. (*Id.* at pp. 957–958.)

Defendants' reliance on *Drain* is misplaced. There was no stipulation between plaintiff and defendants concerning workers' compensation liability, let alone a stipulation that has been approved by the WCAB, a compensation judge or referee, or a court.

Citing *Thomas v. Gordon* (2000) 85 Cal.App.4th 113 [102 Cal.Rptr.2d 28] (*Thomas*), defendants argue that the court properly applied judicial estoppel because success is not invariably a required element.

In *Thomas*, the court upheld the application of judicial estoppel even though the tribunal in which the plaintiff asserted her first position did not adopt or accept it as true. There, the plaintiff set up corporations to be funded by the income from her medical practice and completely controlled by her girlfriend. The plaintiff then filed for personal bankruptcy but did not list as an asset any interest in the corporations. Her bankruptcy petitions were ultimately dismissed. Thereafter the corporations ceased doing business, and the plaintiff sued an accountant for professional negligence in failing to properly advise her concerning the financial affairs of the corporations. (*Thomas, supra,* 85 Cal.App.4th at pp. 115–119.) However, the court judicially estopped her from asserting the she had an interest in the corporations even though the bankruptcy court had not adopted or accepted her implicit claim that she had no interest in the corporations. The court noted that the plaintiff had "brazenly" admitted that her plan was to file for bankruptcy, shelter her assets from creditors, and reclaim her money from her girlfriend after all her debts were discharged. The court concluded, "Assuming that the doctrine of judicial estoppel should be applied to an unsuccessful litigant only in the rare situation where the litigant has made an egregious attempt to manipulate the legal system, we agree with the trial court that 'this is as egregious as it gets . . . .' " (*Id.* at p. 119.)

*Thomas*'s view that judicial estoppel may apply even when a litigant's initial position was unsuccessful is not the majority position, and that view has been questioned. (See *Gottlieb, supra,* 141 Cal.App.4th at p. 147; *Jogani, supra,* 141 Cal.App.4th at pp. 170, 182; *Swahn, supra,* 183 Cal.App.4th at pp. 846–851.)

■ In *Gottlieb, supra,* 141 Cal.App.4th 110, the court noted that *Thomas* was decided before *New Hampshire v. Maine* (2001) 532 U.S. 742 [149 L.Ed.2d 968, 121 S.Ct. 1808] (*New Hampshire*), where the United States Supreme Court explained that "courts regularly inquire whether the party [to be estopped] has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled,' [citation]. Absent success in a prior proceeding, a party's later inconsistent position introduces no 'risk of inconsistent court determinations,' [citation], and thus poses little threat to judicial integrity." (*Id.* at pp. 750–751; see *Zedner v. United States* (2006) 547 U.S. 489, 505 [164 L.Ed.2d 749, 126 S.Ct. 1976] [declining to apply doctrine absent showing of success].) The high court defined success in terms of "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.' " (*New Hampshire, supra,* 532 U.S. at p. 750.)

Given the importance attributed to the element of success, the *Gottlieb* court concluded that, at least in bankruptcy cases, judicial estoppel should not apply unless the bankruptcy court adopted or accepted the truth of the debtor's position. (*Gottlieb, supra,* 141 Cal.App.4th at pp. 145, 147.) Nevertheless, even accepting *Thomas*'s view, the court found the case before it distinguishable because there had been no admission of egregious conduct. (*Id.* at p. 147; see *Jogani, supra,* 141 Cal.App.4th at pp. 170, 182 [finding the requirement of success "is of particular importance," noting that *Thomas* was decided before *New Hampshire*, and distinguishing the facts from those in *Thomas*]; *Swahn, supra,* 183 Cal.App.4th at pp. 846–851 [same].)

We too question *Thomas*'s view that success is not always a required element for judicial estoppel. Moreover, we note that in post-*Thomas* cases, the California Supreme Court has always included success as a *necessary* element. (*Aguilar, supra,* 32 Cal.4th at p. 987; *MW Erectors, supra,* 36 Cal.4th at p. 422.)[9]

---

[9] We observe that even before *Thomas* opined that success may not always be a requirement, the court in *Jackson, supra,* 60 Cal.App.4th 171, opined in dicta that some circumstances "may warrant application of the doctrine [of judicial estoppel] even if the earlier position was not adopted by the tribunal." (*Id.* at p. 184, fn. 8.) Later, the court in *Drain, supra,* 69 Cal.App.4th

Nevertheless, even if we accept *Thomas*'s view for purposes of argument, this case is not one of those "rare instances" where judicial estoppel may be applied to an unsuccessful litigant because he or she made "an egregious attempt to manipulate the legal system." (*Thomas, supra,* 85 Cal.App.4th at p. 119.)

Plaintiff has not brazenly admitted trying to hide anything from the WCAB or the superior court or manipulate the legal system in order to squeeze benefits out of the workers' compensation system and then squeeze damages from defendants. Rather, according to plaintiff, defendants initiated a compensation claim to the Fund without her knowledge, and she did not believe she was properly within the system to begin with. Moreover, she tried to return the benefits paid by the Fund and, presumably, remains willing to do so.[10] Thus, her conduct is not equivalent to that of the plaintiff in *Thomas,* who plotted to hide and protect her assets from creditors by denying an interest in the corporations. Under the circumstances, we decline to uphold the application of judicial estoppel in the absence of success, that is, evidence that the WCAB adopted or accepted as true the assertion of coverage in plaintiff's claim. Without a binding determination by the WCAB or the superior court that the Act applies, we see no danger of inconsistent judicial determinations on that issue.

In sum, the trial court applied judicial estoppel to prevent plaintiff from denying that she was a volunteer/employee covered by the Act at the time of the accident. This ruling rendered it unnecessary to determine whether there were triable issues concerning whether plaintiff was a volunteer/employee for purposes of workers' compensation when she was injured. However, we conclude that the trial court erred in applying judicial estoppel because the material facts necessary to show that the WCAB had adopted or accepted as

---

950, quoted the *Jackson* dicta and rejected a claim that an employee's position, embodied in the terms of his workers' compensation settlement later approved by a compensation referee, was not successful because the referee's approval did not expressly recite the settlement terms. (*Id.* at p. 958.)

Although *Drain* may appear to be antecedent support for *Thomas,* that apparent support is undermined by the fact that *Jackson* and *Drain* were decided before *New Hampshire* and before the California Supreme Court's unqualified inclusion of success as an element and further by the fact that the same court that decided *Drain,* albeit different divisions, later decided *Gottlieb* and *Jogani,* which, as noted, questioned *Thomas* and emphasized the importance of the element of success. (See *Swahn, supra,* 183 Cal.App.4th at p. 849, fn. 7 [making the same point].)

[10] Plaintiff accepts that the Fund would be entitled to recoup the benefits paid through a lien against any judgment she obtained from defendants in her legal action.

true the position plaintiff asserted in her WCAB pleadings were neither undisputed nor conclusively established.[11]

## VI. BINDING ADMISSIONS

" '[I]t is axiomatic that we review the trial court's rulings and not its reasoning.' [Citation.] Thus, a reviewing court may affirm a trial court's decision granting summary judgment for an erroneous reason." (*Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336 [113 Cal.Rptr.3d 279, 235 P.3d 947]; see *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 18–19 [112 Cal.Rptr. 786, 520 P.2d 10] (*D'Amico*).) For this reason we address defendants' claim on appeal that summary judgment was proper because plaintiff expressly and implicitly admitted all of the facts necessary to establish its workers' compensation affirmative defense, namely, that she was a volunteer/employee covered by the Act at the time of the accident.

Defendants point to plaintiff's WCAB pleadings: the application for adjudication, which described plaintiff as a "volunteer" and stated that she "fell at work"; and her subsequent petition, which asserted that she "was injured while volunteering." Defendants also point to plaintiff's initial and first amended complaints in which she alleged that on the day of the accident, she had "volunteered to assist." And lastly, defendants note that plaintiff accepted workers' compensation benefits.

According to defendants, plaintiff's pleadings and conduct reflect admissions that she was a volunteer/employee covered by the Act when the accident occurred and her injuries arose out of and in the course of her employment as a volunteer. (See § 3600 [conditions of compensation].) Given these admissions and the undisputed evidence that Hanuman had a workers' compensation policy covering volunteers at the time of the accident, defendants assert that the court correctly concluded that there were no triable issues of fact concerning defendants' affirmative defense, and therefore, the court properly granted summary judgment.

---

[11] Our conclusion that the court erred in applying judicial estoppel renders moot plaintiff's claim that in applying estoppel, the court erred in overruling her hearsay objection and then considering the contents of her WCAB claim and petition, of which it had taken judicial notice.

We note, however, that in deciding whether to apply judicial estoppel, a court may properly consider a party's statements in properly noticed judicial records and documents for the *nonhearsay* purpose of determining whether a plaintiff has asserted inconsistent positions. (E.g., *Levin v. Ligon, supra*, 140 Cal.App.4th at p. 1466.) Moreover, where such prior statements by a party are contrary to statements on which a party is relying, the prior statements may be admissible against a hearsay objection under Evidence Code section 1235 as prior inconsistent statements. (See *Jogani, supra*, 141 Cal.App.4th at pp. 174–175.)

## A. Judicial Admissions

■ "A judicial admission is a party's unequivocal concession of the truth of a matter, and removes the matter as an issue in the case. [Citations.]" (*Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 48 [43 Cal.Rptr.3d 874].) "Judicial admissions may be made in a pleading . . . . [Citations.] Facts established by pleadings as judicial admissions ' "are conclusive concessions of the truth of those matters, are effectively removed as issues from the litigation, and may not be contradicted, by the party whose pleadings are used against him or her." [Citations.] " '[A] pleader cannot blow hot and cold as to the facts positively stated.' " [Citation]' [Citation.]" (*Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 746 [100 Cal.Rptr.3d 658].)

■ A defendant may rely on judicial admissions in moving for summary judgment. (*Uram v. Abex Corp.* (1990) 217 Cal.App.3d 1425, 1433 [266 Cal.Rptr. 695].) However, "[a] judicial admission is effective (i.e., conclusive) *only* in the particular case." (4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 453, p. 586, italics added; e.g., *Betts v. City National Bank* (2007) 156 Cal.App.4th 222, 235 [67 Cal.Rptr.3d 152] [admission in proposed probate pleading not binding because pleading was not filed in current case].)

Here the WCAB venue authorization form does not contain any admissions of fact, and neither that authorization nor the WCAB claim and petition represent pleadings filed in plaintiff's separate legal action in superior court. Accordingly, nothing alleged in those WCAB pleadings constituted a judicial admission with binding and conclusive effect in the current case and, in particular, in defendants' motion for summary judgment.

■ The doctrine of judicial admissions also does not apply to allegations in pleadings that have been superseded by amendments, especially where the initial pleading was not verified and the court granted permission to file the amended pleading to correct a potentially damaging admission in the initial pleading that was the result of mistake, inadvertence, or inadequate knowledge of the facts. (See *Walker v. Dorn* (1966) 240 Cal.App.2d 118, 120 [49 Cal.Rptr. 362]; 4 Witkin, Cal. Procedure, *supra*, Pleading, §§ 457–458, pp. 589–590, and cases cited; 1 Witkin, Cal. Evidence (5th ed. 2012) Hearsay, § 98, pp. 922–923; e.g., *Staples v. Hoefke* (1987) 189 Cal.App.3d 1397, 1412 [235 Cal.Rptr. 165] [admission in superseded, unverified pleading is not conclusive as substantive proof, but may be offered for impeachment].)[12]

---

[12] Although as a general rule, a party is not allowed to file an amended pleading that contradicts an admission in the party's original pleading, a trial court has discretion to relieve a party from the effect of an admission by allowing amendment of the pleading in which the admission was made where it appears that the admission was the result of mistake or

Here, the unverified initial and first amended complaints were superseded by plaintiff's second amended complaint. Moreover, the trial court granted plaintiff permission to file the second amended complaint in order to eliminate language about volunteering in the earlier pleadings that had been included by mistake.

In short, the order granting summary judgment cannot be upheld on the theory that plaintiff made binding and conclusive *judicial* admissions concerning her status as a covered volunteer/employee and the applicability of the Act to her injuries.

## B. Evidentiary Admissions

Although the statements or allegations of fact in plaintiff's WCAB pleadings and her superseded superior court pleadings do not constitute binding and conclusive judicial admissions, the statements in both types of pleadings may properly be considered in this case as evidentiary admissions or prior inconsistent statements. (*Magnolia Square Homeowners Assn. v. Safeco Ins. Co.* (1990) 221 Cal.App.3d 1049, 1061 [271 Cal.Rptr. 1]; *Dolinar v. Pedone* (1944) 63 Cal.App.2d 169, 176 [146 P.2d 237] (*Dolinar*); *Jones v. Tierney-Sinclair* (1945) 71 Cal.App.2d 366, 373 [162 P.2d 669]; 4 Witkin, Cal. Procedure, *supra*, Pleading, § 453, p. 586; 1 Witkin, Cal. Evidence, *supra*, Hearsay, § 98, at pp. 922–923; see Evid. Code, §§ 1220 [admission by party], 1222 [admission authorized by party], 1235 [prior inconsistent statement].)

"It may be stated as a general rule that a pleading containing an admission is admissible against the pleader in a proceeding subsequent to the one in which the pleading is filed. [Citations.] This is true even on behalf of a stranger to the former action." (*Dolinar, supra*, 63 Cal.App.2d at p. 176.) The pleading constitutes an evidentiary, rather than judicial, admission, and "it is always competent for the party against whom the pleading is offered to show that the statements were inadvertently made or were not authorized by him or made under mistake of fact." (*Id.* at p. 177.) Similarly, "superseded pleadings may be used at trial as admissions against interest; however, the party who made the pleadings must be allowed to explain the changes. [Citation.]" (*Deveny v. Entropin, Inc.* (2006) 139 Cal.App.4th 408, 426 [42 Cal.Rptr.3d 807] (*Deveny*); see *City of Pleasant Hill v. First Baptist Church* (1969) 1 Cal.App.3d 384, 418–419 [82 Cal.Rptr. 1].)

Because the person against whom such evidentiary admissions are offered may explain the admission and thereby, in effect, controvert it or at least

inadvertence. (*Meyer v. State Board of Equalization* (1954) 42 Cal.2d 376, 386 [267 P.2d 257]; *Freidberg v. Freidberg* (1970) 9 Cal.App.3d 754, 761 [88 Cal.Rptr. 451]; *Parker v. Manchester Hotel Co.* (1938) 29 Cal.App.2d 446, 458 [85 P.2d 152].)

avoid being held to the fact apparently admitted, reliance by a moving party on evidentiary admissions generally precludes summary judgment. (*Deveny, supra*, 139 Cal.App.4th at p. 426.)

In light of plaintiff's deposition testimony concerning how the workers' compensation case began, the pleadings she signed, her efforts to extricate herself from the system, her testimony about the circumstances of the accident, and the evidence concerning Hanuman's volunteer policies, the *evidentiary* admissions offered by defendants do not represent undisputed evidence that plaintiff was a volunteer/employee covered by workers' compensation when the accident occurred. In other words, there were triable issues concerning these facts that precluded summary judgment based on the statements in the WCAB and superseded court pleadings.

### C. Admission by Conduct

Melding Evidence Code sections 1220 and 623 together, defendants argue that plaintiff's acceptance of workers' compensation benefits constituted a binding admission that she was a covered volunteer/employee.

Evidence Code section 1220 establishes a hearsay exception for admissions by a party. It provides, "Evidence of a statement is not made inadmissible by the hearsay rule when offered against the declarant in an action to which he is a party in either his individual or representative capacity, regardless of whether the statement was made in his individual or representative capacity."

Evidence Code section 1200, subdivision (a) defines " 'Hearsay evidence' " as "evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." Evidence Code section 225 defines " 'Statement' " as "(a) oral or written verbal expression or (b) nonverbal conduct of a person intended by him as a substitute for oral or written verbal expression."

Given plaintiff's testimony that (1) the workers' compensation benefits were initiated by defendants, (2) she did not think she was properly within the system, and (3) she tried to return the money she had received, defendants reasonably cannot argue there were no triable issues concerning whether the retention of benefits was a knowing and willing acceptance by which she *intended* to convey a concession that she was covered by workers' compensation.

Evidence Code section 623 provides, "Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a

particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it."

█ Evidence Code section 623 codifies the doctrine of equitable estoppel. (See *Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 384 [2 Cal.Rptr.3d 655, 73 P.3d 517] [recognizing codification]; *Feduniak v. California Coastal Com.* (2007) 148 Cal.App.4th 1346, 1359 [56 Cal.Rptr.3d 591].) " 'The doctrine of equitable estoppel is founded on concepts of equity and fair dealing. It provides that a person may not deny the existence of a state of facts if he intentionally led another to believe a particular circumstance to be true and to rely upon such belief to his detriment. The elements of the doctrine are that (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury. [Citation.]' " (*City of Goleta v. Superior Court* (2006) 40 Cal.4th 270, 279 [52 Cal.Rptr.3d 114, 147 P.3d 1037].)

The general rule is that estoppel must be specifically "pleaded in the complaint with sufficient accuracy to disclose facts relied upon." (*Chalmers v. County of Los Angeles* (1985) 175 Cal.App.3d 461, 467 [221 Cal.Rptr. 19]; see *Central National Ins. Co. v. California Ins. Guarantee Assn.* (1985) 165 Cal.App.3d 453, 460 [211 Cal.Rptr. 435] [equitable estoppel "must be pleaded, either as a part of the cause of action *or as a defense*" (italics added)]; *Mills v. Forestex Co.* (2003) 108 Cal.App.4th 625, 641 [134 Cal.Rptr.2d 273].)

Defendants did not plead equitable estoppel as an affirmative defense or otherwise plead the facts necessary to establish it. Moreover, even if we assume that equitable estoppel were a theory available to defendants on appeal, that theory would fail. As noted, there were triable issues concerning whether plaintiff intended her receipt or acceptance of benefits as an admission that workers' compensation applied. Moreover, there were triable issues concerning whether she intended defendants to act on her receipt or acceptance of benefits, whether defendants were ignorant of the true facts, and whether defendants relied upon plaintiff's receipt or acceptance to their detriment.

In sum, defendants' dubious theory of evidentiary admission/estoppel does not support the order granting summary judgment.

## D. The *D'Amico* Rule

█ In *D'Amico, supra,* 11 Cal.3d 1, the Supreme Court held that a party may not defeat summary judgment by means of declarations or affidavits

which contradict that party's deposition testimony or sworn discovery responses. (*Id.* at pp. 21–22; *Shin v. Ahn* (2007) 42 Cal.4th 482, 500, fn. 12 [64 Cal.Rptr.3d 803, 165 P.3d 581]; *Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 653–654 [51 Cal.Rptr.2d 907].) The *D'Amico* rule has been characterized as " 'pre-trial estoppel.' " (*Jogani, supra,* 141 Cal.App.4th at p. 177.) Properly applied, the *D'Amico* rule allows the trial court to disregard a party's declaration or affidavit only where it and the party's deposition testimony or discovery responses are "contradictory and mutually exclusive" (*Benavidez v. San Jose Police Dept.* (1999) 71 Cal.App.4th 853, 862–863 [84 Cal.Rptr.2d 157]) or where the declaration contradicts "unequivocal admissions" in discovery. (*Mikialian v. City of Los Angeles* (1978) 79 Cal.App.3d 150, 162 [144 Cal.Rptr. 794].) Conversely, "[a] summary judgment should not be based on tacit admissions or fragmentary and equivocal concessions, which are contradicted by other credible evidence." (*Price v. Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 482 [261 Cal.Rptr. 735]; accord, *Scalf v. D. B. Log Homes, Inc.* (2005) 128 Cal.App.4th 1510, 1523 [27 Cal.Rptr.3d 826].)

Defendants' reliance on the *D'Amico* rule is misplaced. In support of their motion below, defendants presented no deposition testimony or other response to discovery in which plaintiff unequivocally admitted or conceded that she was a covered volunteer/employee or that workers' compensation applied. Moreover, defendants now cite no authority suggesting that under the *D'Amico* rule, a party may not raise a triable issue of fact and defeat summary judgment by contradicting his or her written assertions in WCAB pleadings or unverified pleadings in civil cases or his or her arguably tacit admissions by conduct.

## VII. INTERPRETATION OF SECTION 3363.6

Our conclusion that the undisputed evidence did not support judicial estoppel or otherwise conclusively establish defendants' workers' compensation affirmative defense does not necessarily eliminate that affirmative defense from the case. We observe, however, that in her motion for summary adjudication, plaintiff asserted an interpretation of section 3363.6 which would, given the undisputed evidence, negate the workers' compensation affirmative defense. In particular, plaintiff claimed that to extend workers' compensation coverage to a volunteer, section 3363.6 requires that the particular volunteer be personally named and deemed a volunteer/employee in writing. She reiterates that claim on appeal. She further claims that even when a volunteer has properly been deemed an employee, that status does not become effective and the Act does not apply unless and until the volunteer knowingly and voluntarily accepts it. Given the undisputed evidence, that interpretation too, if correct, would eliminate the affirmative defense. Because

of the impact of plaintiff's claims on the continued viability of the affirmative defense, we shall address them.

## A. The Act

 Article XIV, section 4 of the California Constitution deems workers' compensation to be an important and beneficial social policy in California.[13] The Act embodies this policy and establishes "a compulsory scheme of employer liability without fault for injuries arising out of and in the course of employment." (*Sea-Land Service, Inc. v. Workers' Comp. Appeals Bd.* (1996) 14 Cal.4th 76, 85 [58 Cal.Rptr.2d 190, 925 P.2d 1309].) Its primary objective is to protect individuals against the special risks of employment with comprehensive coverage for their injuries. (*Arriaga v. County of Alameda* (1995) 9 Cal.4th 1055, 1061 [40 Cal.Rptr.2d 116, 892 P.2d 150] (*Arriaga*).) More specifically, the Act seeks (1) to ensure that the cost of industrial injuries will be part of the cost of goods rather than a burden on society, (2) to guarantee prompt, limited compensation for an employee's work injuries, regardless of fault, as an inevitable cost of production, (3) to spur increased industrial safety, and (4) in return, to insulate the employer from tort liability for his employees' injuries. (*S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341, 354 [256 Cal.Rptr. 543, 769 P.2d 399].)

The Act accomplishes these purposes in a number of ways, but primarily it defines "employment" broadly and establishes a general presumption that any person "in the service" of another is a covered "employee" (§ 3351; see § 3357); it requires all employers (except the state) to secure the payment of compensation by obtaining insurance from an authorized carrier or by securing a certificate of consent from the Director of Industrial Relations to become a self-insurer (§ 3700); and it makes workers' compensation an employee's exclusive remedy against an employer for injuries sustained on the job. (§§ 3600, 3602, subd. (a).)

 Although section 3351 broadly defines "employee" in terms of "service [to] an employer," section 3352 excludes several categories of

---

[13] "The Legislature is hereby expressly vested with plenary power, unlimited by any provision of this Constitution, to create, and enforce a complete system of workers' compensation, by appropriate legislation, and in that behalf to create and enforce a liability on the part of any or all persons to compensate any or all of their workers for injury or disability . . . sustained by the said workers in the course of their employment, irrespective of the fault of any party[, and to make] full provision for adequate insurance coverage against liability to pay or furnish compensation; . . . to the end that the administration of such legislation shall accomplish substantial justice in all cases expeditiously, inexpensively, and without incumbrance of any character; all of which matters are expressly declared to be the social public policy of this State, binding upon all departments of the State government." (Cal. Const., art. XIV, § 4.)

persons from the definition. In particular, subdivision (i) excludes "[a]ny person performing voluntary service for a . . . private, nonprofit organization who receives no remuneration for the services other than meals, transportation, lodging, or reimbursement for incidental expenses." (§ 3352, subd. (i).) While this exclusion would appear to apply to Hanuman's volunteers, it is not absolute. If a nonprofit organization wants to provide workers' compensation benefits to its volunteers, it may do so under section 3363.6. The statute provides that "a person who performs voluntary service without pay for a private, nonprofit organization, as designated and authorized by the board of directors of the organization, shall, when the board of directors of the organization, in its sole discretion, so declares in writing and prior to the injury, be deemed an employee of the organization for purposes of this division while performing such service." (§ 3363.6, subd. (a).)[14]

## B. The Personal Identification Requirement

Plaintiff claims that section 3363.6 required Hanuman's board to identify her personally by name and in writing and declare her to be a covered volunteer/employee. Thus, because the undisputed facts establish that the board did not do so, she could not be deemed a covered volunteer/employee subject to the exclusive remedy provisions of the Act.

Plaintiff infers this personal identification requirement primarily from the Legislature's use of the singular term "a person." Citing some legislative history for section 3363.6, plaintiff notes that as originally proposed, the statute would have *mandated* coverage for all volunteers. The proposed mandate generated concern from public agencies because it could increase their costs and threaten volunteer programs. Plaintiff opines that in response to these concerns, the Legislature purposefully used the singular "a person" to establish a personal identification requirement. Plaintiff explains that the requirement protects private, nonprofit organizations from the financial burden of increased workers' compensation insurance costs because it prevents a board from categorically deeming all volunteers current and future to be covered employees. As plaintiff puts it, "If the [L]egislature wanted to allow a board to sweep all volunteers into the exclusive remedy of workers['] compensation[,] it would have used much broader language such as 'persons

---

[14] Section 3363.6, subdivisions (b) and (c) define " 'voluntary service without pay.' " Subdivision (b) provides, "For purposes of this section, 'voluntary service without pay' shall include the performance of services by a parent, without remuneration in cash, when rendered to a cooperative parent participation nursery school if such service is required as a condition of participation in the organization."

Subdivision (c) of section 3363.6 provides, "For purposes of this section, 'voluntary service without pay' shall include the performance of services by a person who receives no remuneration other than meals, transportation, lodging, or reimbursement for incidental expenses."

who perform voluntary service' or 'groups of persons who perform voluntary service . . . .' Additionally, the Legislature would have used the plural 'employees' rather than the singular 'employee of the organization' if that was what was intended. There is nothing more unambiguous than the difference between singular and plural."

 In construing statutes, we first ascertain the intent of the Legislature so as to effectuate the purpose of the law; and to this end, we first examine the statutory language, giving it a plain and commonsense meaning. (*Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1106–1107 [133 Cal.Rptr.3d 738, 264 P.3d 579].) If the language is clear and unambiguous, we simply presume the Legislature meant what it said, and the plain meaning governs. (*Allen v. Sully-Miller Contracting Co.* (2002) 28 Cal.4th 222, 227 [120 Cal.Rptr.2d 795, 47 P.3d 639].) If, however, the statutory language is ambiguous or reasonably susceptible to more than one interpretation, the language "must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.] Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation. [Citation.] Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323]; see *People v. Jefferson* (1999) 21 Cal.4th 86, 94 [86 Cal.Rptr.2d 893, 980 P.2d 441].)

 In addition to these general rules, section 3202 specifically requires that all workers' compensation statutes "be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment." (See *Claxton v. Waters* (2004) 34 Cal.4th 367, 373 [18 Cal.Rptr.3d 246, 96 P.3d 496].)

With these rules in mind, we turn to section 3363.6. It incorporates by reference sections 3351, 3352, and 3357. Section 3351 generally defines the word " '[e]mployee,' " a singular noun, as "every person in the service of an employer," and then in subsequent subdivisions, the statute specifically describes different categories of persons that come within the general definition. Some subdivisions use plural nouns and terms—e.g., such as "[a]liens and minors" (§ 3351, subd. (a)), "[a]ll elected and appointed paid public officers" (§ 3351, subd. (b)), "[a]ll officers and members of boards" of corporations (§ 3351, subd. (c)). (See § 3351, subds. (e) ["[a]ll persons"] & (f) ["[a]ll working members"].) One subdivision uses the singular term "any person." (§ 3351, subd. (d).) Section 3352 excludes various categories of

persons from the general definition, and all of the descriptive categories in its subdivisions begin with "[a]ny person" or a relevant singular equivalent. (§ 3352, subds. (a)–(*o*).) Section 3357 establishes a presumption that "[a]ny person" rendering services is presumed to be an employee except for independent contractors and those expressly excluded. And section 3363.6, which also describes a category of persons who may be included in the definition of "employee," uses "a person."[15]

The use of singular and plural terms in these statutes must be viewed in light of section 13 which provides, "The singular number includes the plural, and the plural the singular." Section 13 applies unless the context requires otherwise. (§ 5.)

The statutory context here does not require otherwise. The provisions which use the singular term "any person" could be rewritten using the alternative singular term "a person" or the plural term "all persons," and there would be no change in scope or meaning. Similarly, the provisions that use the plural term "all persons" could be rewritten using the singular terms "a person" or "any person" without a change in scope or meaning. For example, if section 3363.6 read, "Notwithstanding Sections 3351, 3352, and 3357, *all persons* who perform voluntary services without pay for a private, nonprofit organization, as designated and authorized by the board of directors of the organization, shall, when the board of directors of the organization, in its sole discretion, so declares in writing and prior to injury, be deemed *employees* of the organization for purposes of this divisions while performing such services," it would convey nothing more or less or different than it does as written. The same is true if plural usages, such as "aliens and minors," "all elected and appointed paid public officers," "all officers and members of boards" of corporations" read "any alien or minor"; "any elected or appointed paid public officer"; or "any officer member of a board."

Given section 13, we do not find that the Legislature's use of the singular here and the plural there to describe the various categories of those included in or excluded from the definition "employee" was guided by an intent to achieve a particular substantive legal effect such as the creation of a personal identification requirement. Indeed, we can think of no more obscure way of trying to establish such a requirement than by using a singular rather than plural term. Thus although we ordinarily we presume the Legislature intended every word, phrase, and provision in a statute to have meaning and to perform a useful function, and we must, when possible, give effect and significance to every word and phrase (*Garcia v. McCutchen* (1997) 16 Cal.4th

---

[15] Section 3210 provides, " 'Person' includes an individual, firm, voluntary association, or a public, quasi public, or private corporation." However, in the context of section 3363.6, "person" can only refer to an actual person.

469, 476 [66 Cal.Rptr.2d 319, 940 P.2d 906]), we conclude that the use of the singular and plural in these related statutes merely reflects a matter of style. (Cf. *Del Cerro Mobile Estates v. City of Placentia* (2011) 197 Cal.App.4th 173, 183–184 [127 Cal.Rptr.3d 413] [rejecting restrictive statutory interpretation based on use of singular rather than plural]; *Bay Guardian Co. v. New Times Media LLC* (2010) 187 Cal.App.4th 438, 461 [114 Cal.Rptr.3d 392] [rejecting restrictive statutory interpretation based on use of plural].)

Plaintiff's interpretation conflicts not only with section 13 but also with section 3202.

■ The purpose of the statute is clear. Although private, nonprofit organizations are not *required* to provide coverage for volunteers (see §§ 3700 [requiring coverage for employees], 3352, subd. (i) [volunteers are not employees]), section 3363.6 allows them to do so if they choose. Although the statute, as written, is awkward and disjointed, it provides, in essence, that a volunteer becomes a covered employee if the board so declares in writing before any work-related injury. Section 3202 requires that the provisions of the Act be construed liberally to *extend* workers' compensation coverage to injured persons.

Plaintiff's requirement represents a procedural formality that could result in depriving coverage and benefits to volunteers even when a board has unambiguously expressed in writing an intent to extend workers' compensation coverage to them *and* has actually done so. For this reason, the trial court rejected a personal identification requirement. So do we.

Consider this hypothetical. The board of a large, nonprofit organization, such as United Way or the Red Cross, decides it would be good to extend workers' compensation to its volunteers. In writing, it states generally that its volunteers are hereafter covered by workers' compensation and purchases additional workers' compensation insurance to cover them. Thereafter, a volunteer is injured. Under plaintiff's requirement, the injured volunteer would not be eligible for workers' compensation benefits, and the nonprofit organization would be vulnerable to a tort action, because the board failed to specifically list the volunteer's name in the writing.

Moreover, as defendants opined below, the board of such a large, nonprofit organization may not meet on a daily, weekly, or even monthly basis, and when it does, it may not handle the details of day-to-day operations and individualized personnel matters. For this reason, a board may never know the names of new volunteers or be able to name them in a formal writing as soon as they join. Thus, if a new volunteer is injured before the board can put the person's name in a writing, the injured volunteer would be deprived of

workers' compensation benefits. On the other hand, if the board had previously expressed in writing its intent to cover volunteers and expanded its insurance policy coverage to do so, the new volunteer would enjoy workers' compensation benefits immediately upon joining the organization and be covered for any subsequent injury.

In short, interpreting section 3363.6 to require personal identification of volunteers in order to provide them with workers' compensation conflicts with section 3202 because it could result in restricting, rather than extending, coverage to injured persons.[16]

Finally, the explanation plaintiff offers to justify a personal identification requirement is unpersuasive. Plaintiff finds support in the legislative history of section 3363.6 as revealed by various documents submitted below by the parties.

Section 3363.6 was adopted in 1974 along with an amendment to the related section 3363.5, which allows public agencies to extend workers' compensation to their volunteers. (Stats. 1974, ch. 912, §§ 1, 2, p. 1926.) The legislative history produced below included two 1974 letters, one from the Los Angeles Unified School District and the other from the state Department of the Youth Authority opposing the original version of the statute because it would mandate coverage for volunteers, increase premium costs, and threaten the existence of beneficial volunteer programs. Apparently, the opposition to a mandate worked because it was replaced with an elective approach that made coverage for volunteers permissive or voluntary for public agencies and nonprofit organizations.

---

[16] Citing *Munoz v. City of Palmdale* (1999) 75 Cal.App.4th 367 [89 Cal.Rptr.2d 229], plaintiff argues that because section 3363.6 is an exception to the general exclusion for volunteers in section 3352, subdivision (i), it must be narrowly construed. *Munoz* does not suggest section 3363.6 must be narrowly construed. Indeed, it does not even involve or cite that section.

If section 3363.6 were an exception to the broad definition of "employee" in section 3351, that is, if it restricted the extension of workers' compensation, then we could disregard section 3202 and construe it narrowly because broadly construing the exception would restrict workers' compensation even more. (See, e.g., *Capon v. Monopoly Game LLC* (2011) 193 Cal.App.4th 344, 355 [122 Cal.Rptr.3d 536] ["[i]n light of the legislative directive to construe the [Home Equity Sales Contract] Act liberally . . . it is appropriate to construe the exceptions narrowly"].) In other words, the corollary to liberal construction for the purpose of extending workers' compensation coverage to injured persons is narrow construction of exceptions that restrict coverage. Here, however, section 3363.6 is not an exception to the inclusive definition of "employee." It is an exception to an *exclusion*, and as such it expands the reach of workers' compensation. Accordingly, we consider it subject to liberal construction under section 3202. (See, e.g., *Machado v. Hulsman* (1981) 119 Cal.App.3d 453, 455–456 [173 Cal.Rptr. 842] [liberally construing terms of § 3361, which creates exception to general exclusion for volunteers].)

It is reasonable to infer that the Legislature dropped the idea of a mandate because of the potential negative impact that it could have on public agencies and nonprofit organizations if they were suddenly required to extend workers' compensation coverage to their volunteers. By making coverage elective, the Legislature allowed those agencies and organizations to make their own cost-benefit assessment and provide coverage to volunteers if it made sense to do so.

Plaintiff argues that in this permissive context, a personal identification requirement "makes perfect sense" because it prevents boards from categorically sweeping all volunteers into the workers' compensation system at once and presumably increasing costs. Plaintiff appears to be saying that the requirement was imposed to protect boards from themselves. However, what makes perfect sense to plaintiff, we find illogical. Because a board is free to determine whether covering volunteers will make financial sense, strengthen the organization, and provide benefits to both the organization and its volunteers, we fail to see the danger in permitting a board to "sweep" all existing and future volunteers under workers' compensation in a single act. And we fail to see the purpose of requiring a piecemeal, volunteer-by-volunteer approach.

Plaintiff also quotes extensively from documents related to a 1979 amendment to section 3363.6. (Stats. 1979, ch. 76, § 3, p. 185.) In pertinent part, the amendment added the requirements that the board put its election to extend coverage in writing before any injury. This legislative material explains that the changes were needed to further clarify the status of volunteers who perform voluntary services but receive no remuneration other than meals, transportation, or reimbursement for expenses.[17] Neither these materials nor the added requirement of a writing before an injury suggests that the statute as originally enacted or even as later modified required the personal identification of those volunteers for them to be considered covered employees.

In sum, we reject plaintiff's construction of section 3363.6 and do not find that it imposes a personal identification requirement.

## C. Knowledge and Acceptance of Volunteer/Employee Status

Plaintiff contends that under section 3363.6, a declaration rendering volunteers covered employees does not become effective unless and until an

---

[17] The Legislature previously amended the statute in 1976 and again in 1978 to define and further clarify the term "voluntary service without pay." (Stats. 1976, ch. 51, § 1, p. 81; Stats. 1978, ch. 239, § 2, p. 506.)

affected volunteer has notice of the declaration and voluntarily accepts workers' compensation coverage before any injury. Thus, because the undisputed evidence establishes that she did not receive such notice and did not voluntarily accept workers' compensation coverage before the accident, the Act was inapplicable. Plaintiff complains, "Here, of course, without the slightest advance warning, Hanuman plunged Minish into the toils of the workers compensation system not only without her knowledge but, as soon as she learned of it, very much against her will."

■ Section 3363.6 does not explicitly require notice to volunteers that they have been deemed volunteer/employees. Nor does the statute provide that such status must be accepted by each volunteer individually. ■ It is a well-settled rule that courts must not add provisions to a statute under the guise of statutory interpretation to accomplish a purpose that does not appear on the face of the statute or from its legislative history. (*People v. Morris* (1988) 46 Cal.3d 1, 15 [249 Cal.Rptr. 119, 756 P.2d 843], disapproved on other grounds in *In re Sassounian* (1995) 9 Cal.4th 535, 543–544, fn. 5 [37 Cal.Rptr.2d 446, 887 P.2d 527]; *People v. One 1940 Ford V-8 Coupe* (1950) 36 Cal.2d 471, 475 [224 P.2d 677]; see Code Civ. Proc., § 1858.)

In this instance, plaintiff does not try to tease such requirements from the language of section 3363.6 or any other sections of the Act. Rather, plaintiff argues that such requirements must be implied and cites *Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222 [110 Cal.Rptr. 144, 514 P.2d 1224] (*Moyer*) and *Arriaga, supra,* 9 Cal.4th 1055 for the proposition that a person cannot be involuntarily transformed from an excluded volunteer to a covered volunteer/employee. Plaintiff's reliance on *Moyer* and *Arriaga* is misplaced.

*Moyer*, which was decided before section 3363.6 was even enacted, involved former section 139.5, which provided that if an injured employee voluntarily accepted his or her employer's rehabilitation program, the permanent disability percentage would no longer be based on the date of the injury but rather on the person's age and occupation at the time the determination was made.[18] (*Moyer, supra,* 10 Cal.3d at pp. 225–226.) Moyer was injured at work, he later participated in his employer's rehabilitation program, and as a result, his permanent disability percentage was reduced. He challenged the reduction on the ground that he did not know that participation in the program would trigger a reduction in benefits, and therefore, he could not

---

[18] At the time, the statute provided, in pertinent part, " 'The determination of the employee's permanent disability percentage in such case shall be with reference to his age and occupation at the time that such determination is then made. [¶] The initiation of a rehabilitation program or the acceptance thereof shall be voluntary and not be compulsory on the employer, the insurance carrier or the injured workman.' " (*Moyer, supra,* 10 Cal.3d at p. 226, fn. 1, italics omitted.)

have *voluntarily* accepted that program. Construing the statutory terms "acceptance" and "voluntary," the Supreme Court agreed, holding that an employee must know the consequences of participation in a program for his or her acceptance to be deemed "voluntary." (*Id.* at pp. 229–230.)

Although *Moyer* did not address any issues raised in this case, plaintiff points out that *Moyer*'s explanation of the term "voluntary" was quoted by the Supreme Court in *Arriaga*, where the court did refer to section 3363.6.

In that case, Arriaga was convicted of a crime. As part of her sentence, she was ordered to work off a four-year-old speeding ticket, which meant participating in a weekend program cleaning a ventilation duct, where she was exposed to toxic fumes and injured. She sued the county for negligence, but her action was dismissed. The Supreme Court affirmed, concluding that Arriaga was a county employee, and therefore workers' compensation was her exclusive remedy. (*Arriaga, supra,* 9 Cal.4th at pp. 1058–1060.)

In reaching this conclusion, the court rejected her reliance on *California State Univ., Fullerton v. Workers' Comp. Appeals Bd.* (1993) 16 Cal.App.4th 1819 [21 Cal.Rptr.2d 50] (*Fullerton*), disapproved on other grounds in *Arriaga, supra,* 9 Cal.4th at page 1067, footnote 10. In *Fullerton,* the defendant was assessed a fine and placed on probation, with the option to perform community service in lieu of the fine. He took the option and worked as a groundskeeper at California State University, Fullerton, where he was injured. On appeal, the court found that he was not a university employee but a person performing voluntary services for a public agency without pay and thus excluded under section 3352, subdivision (i) from the definition of "employee." (*Fullerton, supra,* 16 Cal.App.4th at p. 1827; see § 3352, subd. (i).) The court reasoned that because the defendant received no consideration from the university, there was no employer-employee relationship. Although the defendant owed a debt to society and chose community service as a more palatable means to pay it, that service was voluntary and relief from his debt to society did not establish consideration sufficient to make him the university's employee. (*Fullerton, supra,* 16 Cal.App.4th at pp. 1826–1827.) Thus, being a volunteer, the defendant could be considered an employee only if the university previously had adopted a resolution deeming its volunteers employees, which it had not done. (*Fullerton, supra,* 16 Cal.App.4th at p. 1827; § 3363.5.)

In rejecting *Fullerton*'s analysis, the *Arriaga* court opined, "We do not believe that persons who perform work pursuant to a court order are performing 'voluntary service' within the meaning of [section 3352, subdivision (i), excluding volunteers], even if the order permits them to pay a fine instead of working." (*Arriaga, supra,* 9 Cal.4th at p. 1064.) Citing *Moyer,* the

court opined that " 'voluntary' " means the exercise of free will apart from any compulsion that may constrain one's choice. (*Ibid.*) The court found that "a person who works in order to comply with a court order to pay a fine or work is *not* acting free of compulsion, and therefore is not 'performing voluntary service' within the meaning of section 3352, subdivision (i)." (*Ibid.*, italics added.) The court found support for its conclusion in the legislative history of section 3301, which defined "employer" (§ 3301), and it quoted a finance committee analysis that compared section 3301 to section 3363.6. (*Arriaga, supra,* 9 Cal.4th at pp. 1065–1066.)

The connection in *Arriaga* between *Moyer* and section 3363.6 is remote. Section 3363.6 applies to persons who perform "voluntary services." *Arriaga* held that the statute is inapplicable if one is *compelled* to work because services are not voluntary as that term was explained in *Moyer.* That is the extent to which *Moyer* and *Arriaga* have any bearing on the meaning of section 3363.6. Those cases do not further suggest that persons performing voluntary services must knowingly accept a board's decision to include them within their workers' compensation coverage.

█ Simply put, where an injured person qualifies as an "employee," whether under section 3351 or section 3363.6, the Act applies regardless of whether the injured person knows that he or she is a covered employee or wants to be covered under the Act. Again, we must liberally construe section 3363.6 to extend coverage to injured persons. Plaintiff's proposed knowledge and acceptance requirement would tend to restrict, not expand, coverage. Thus inferring such a requirement, even if it were reasonable to do so, would conflict with our interpretive duty.

█ Plaintiff argues that the rule of liberal construction should not be used to "convert [her] involuntarily into a volunteer." However, "[t]he rule of liberal construction 'is not altered because a plaintiff believes that [he or she] can establish negligence on the part of [an] employer and brings a civil suit for damages.' [Citation.] It requires 'that we liberally construe the Act 'in favor of *awarding work[ers'] compensation,* not in permitting civil litigation. [Citation.]' [Citations.]" (*Arriaga, supra,* 9 Cal.4th at p. 1065.) This is so even where it might be to the advantage of a particular plaintiff to avoid workers' compensation benefits and seek a remedy at law. (*Machado v. Hulsman, supra,* 119 Cal.App.3d at pp. 455–456.) Indeed, " '[t]hough it may be more opportunistic for a particular plaintiff to seek to circumscribe the purview of compensation coverage because of his immediate interest and advantage, the courts must be vigilant to preserve the spirit of the act and to prevent a distortion of its purposes.' " (*Eckis v. Sea World Corp.* (1976) 64 Cal.App.3d 1, 7 [134 Cal.Rptr. 183].)

In short, we reject plaintiff's claim that section 3363.6 imposes a notice and acceptance requirement.[19]

## VIII. Conclusion

 In sum, the trial court erred in granting summary judgment to defendants on their workers' compensation affirmative defense because the undisputed facts do not establish either that judicial estoppel was applicable or that plaintiff admitted that she was covered by workers' compensation.

## IX. Disposition

The judgment is reversed. Plaintiff is entitled to her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

Premo, J., and Elia, J., concurred.

A petition for a rehearing was denied February 25, 2013, and respondents' petition for review by the Supreme Court was denied May 15, 2013, S209193.

---

[19] In her reply brief, plaintiff raises some additional claims concerning the meaning of section 3363.6 and defendants' alleged failure to comply. However, we need not address arguments raised for the first time in the reply brief and decline to do so here. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764–766 [60 Cal.Rptr.2d 770].)