Filed 8/27/14  Buttacavoli v. Rojas CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOSEPH BUTTACAVOLI et al.,<br><br>    Cross-complainants, Cross-defendants and Respondents,<br><br>          v.<br><br>STEVEN R. ROJAS,<br><br>    Cross-defendant, Cross-complainant and Appellant. | G048487<br><br>(Super. Ct. No. 30-2009-00330086)<br><br>O P I N I O N |

          Appeal from a judgment of the Superior Court of Orange County, Sheila Fell, Judge.  Affirmed.

          Best Best & Krieger, Kira L. Klatchko and Irene S. Zurko for Cross-defendant, Cross complainant and Appellant.

          Lurie & Associates, Barak Lurie and Michael J. Conway for Cross-complainants, Cross-defendants and Respondents.

                    *          *          *

Joseph Buttacavoli and Steven Rojas were 50/50 partners who, beginning in 1993, owned and operated a car dealership, Fullerton Dodge. In 2002, Rojas stopped managing Fullerton Dodge and left to operate a new dealership, leaving Buttacavoli in charge. Shortly before Rojas left, Fullerton Dodge began struggling financially. From 2002 through 2006, Buttacavoli made various loans to the dealership to ensure it had sufficient cash to operate.

In December 2006, Rojas agreed to buy Buttacavoli's share for $1.5 million. Not long after that payment was made, Chrysler Financial Services, who financed Fullerton Dodge's operations, put the dealership on a credit hold, effectively shutting down the dealership.

Chrysler Financial Services later sued Buttacavoli, his wife, and Rojas to collect on personal guarantees they had executed for loans it made to Fullerton Dodge. Buttacavoli and his wife cross-complained against Rojas, invoking an indemnity provision in the sale agreement and ultimately seeking repayment for their settlement with Chrysler Financial Services as well as the attorney fees they paid to defend the case. In turn, Rojas cross-complained against Buttacavoli, asserting claims for breach of the oral partnership agreement, breach of fiduciary duty, and fraud. The gravamen of Rojas's claim was that, from 2002 to 2006, Buttacavoli looted the company. After a bench trial, the court found in favor of Buttacavoli on his indemnity claim and against Rojas on his claims. Rojas appealed.

Rojas's principal claim on appeal is that the court improperly put the burden of proof on Rojas to prove a breach of Buttacavoli's fiduciary duties. Rojas also contends the decision is not supported by substantial evidence. We conclude the evidence supports the court's finding that Buttacavoli loaned more to the dealership than he took out, and thus the evidence refuted causation and damages regardless of who carried the burden of proof.

Rojas also claims the evidence established that Buttacavoli breached the warranty in the sale agreement that the financial records fairly represented Fullerton Dodge's finances. He further claims that Buttacavoli breached a fiduciary duty by negotiating the sale of a cell tower after he was no longer an owner. We find no merit in these contentions and affirm.

FACTS

Rojas met Buttacavoli in April 1991. Buttacavoli was the sales manager at what would become Fullerton Dodge. Buttacavoli became a partner in Fullerton Dodge in 1993, 18 months after its opening. Buttacavoli initially invested $111,000, resulting in Rojas and Buttacavoli each owning 50 percent of the dealership. Buttacavoli continued operating as the sales manager and Rojas saw to the interactions outside the dealership. Rojas and Buttacavoli formed Stone Properties LLC to purchase and hold the real property upon which the dealership was located.

Chrysler Financial Services financed the operations of Fullerton Dodge, and over the course of the parties' ownership of Fullerton Dodge, Chrysler Financial Services lent Fullerton Dodge approximately $12.8 million. Buttacavoli, his wife, and Rojas signed personal guarantees of at least some of those loans.

Beginning in late 2001 the dealership began facing a cash shortage. Starting as early as 2002, Buttacavoli made a series of loans to Fullerton Dodge to help fund the store. In 2002, Fullerton Dodge issued a demand note entitling Buttacavoli to payments in the amount of $1,456,464.85. This reflected the amount Buttacavoli had loaned Fullerton Dodge up to this point. Rojas signed the demand note.

That same year Rojas stopped actively managing Fullerton Dodge to run a new dealership, Redlands Ford, leaving the operation of Fullerton Dodge to Buttacavoli.

3

Fullerton Dodge's financial decline continued. In August 2004, Buttacavoli wrote a check to Fullerton Dodge in the amount of $2,750,000 to help fund operations. Two million of this was memorialized in a promissory note in October 2004. In September 2004, Buttacavoli wrote Rojas a letter stating, "Fullerton Dodge has essentially run out of money," and asked Rojas not to take further draws until the cash situation could be rectified. In early 2005, Buttacavoli stopped taking a salary. Buttacavoli loaned the dealership a further $974,797 in March 2005, which was also memorialized by a promissory note. In addition, Buttacavoli would at various times deposit money in an interest-bearing "CMA" account at the dealership.

Over the course of their ownership of Fullerton Dodge, both Rojas and Buttacavoli would take draws from the partnership against current or future profits. Buttacavoli would also, at times, take money out as repayment for loans or other investments he had made in the dealership.

In 2006, Buttacavoli was attempting to sell his interest in the dealership and had found a third party buyer. Rojas had a right of first refusal, however, and exercised it. In December 2006, the parties reached an oral agreement for the sale of Buttacavoli's interest. Buttacavoli was to receive $1.5 million, a free loaner car, and health insurance for his family.

At that point in time Buttacavoli stopped managing the dealership, and Rojas brought in his own general manager, Louis Rivas, and his own secretary/treasurer, Tracey Hooper. Hooper examined the financial books and accounts and testified she immediately noticed improprieties such as aged accounts receivables and "outrageous" employee receivables attributable to Buttacavoli. Rivas likewise testified he saw financial irregularities such as the value of the parts inventory being overstated and delinquent accounts payable and receivable. He testified that Tony B Suzuki, a Suzuki dealership Buttacavoli was running on the side using some of Fullerton Dodge's resources, had run up a receivable of $200,000. Hooper and Rivas brought these issues to

4

Rojas's attention in December 2006. However, there are no contemporaneous documents to substantiate Rojas's team's alleged concerns about the books and records.

Chrysler Financial Services had to approve the sale of Buttacavoli's interest to Rojas, and it imposed several conditions before granting approval. Most significantly, the dealership needed approximately $2.5 million in working capital. This was to be accomplished by Chrysler Financial Services loaning Fullerton Dodge $1.9 million, which Buttacavoli personally guaranteed, and from which Fullerton Dodge would pay the $1.5 million purchase price. Also, Rojas was supposed to invest a further $300,000 of his own money (which he never did). And Rojas's new business partner, Rivas, was to invest $200,000. For his part, Buttacavoli had $3 million of his money invested in the dealership. Chrysler Financial Services required him to credit approximately $1 million of that to paying off a draw account, to invest $1 million in a subordinated note, and to forgive the final million.

In April 2007, despite the alleged irregularities in the books and records, Rojas and Buttacavoli executed a written agreement for the sale (the "buy/sell agreement").

In May 2007, Chrysler Financial Services performed an audit of Fullerton Dodge. While the audit resulted in some adjustments to the financial accountings, the auditors concluded, "The condition of the books and records are fair." It also noted the dealership's bank accounts "are properly reconciled each month and neither had any significant reconciliation items."

In January 2008, Rojas authorized the payment to Buttacavoli of the $1.5 million purchase price.

Shortly thereafter, Chrysler Financial Services placed Fullerton Dodge on a credit hold, which effectively shut the dealership down. The record is unclear as to the reason. Rivas testified that Chrysler Financial Services told him the payment to

5

Buttacavoli was supposed to "stay in the store in order for [Fullerton Dodge] to be capitalized."[1]

In December 2009, Chrysler Financial Services sued Rojas, Buttacavoli, and his wife for breach of their guarantees of loans made to Fullerton Dodge. The matter apparently settled with Buttacavoli and his wife paying $325,000 to Chrysler Financial Services. They incurred $111,000 in attorney fees.

In February 2010, Buttacavoli and his wife filed a verified cross-complaint against Rojas for, among other things, indemnification. In March 2010, Rojas answered, admitting the truth of various loans Buttacavoli made to Fullerton Dodge. Also in March 2010, Rojas cross-complained against Buttacavoli for, among other things, breach of contract and breach of fiduciary duty.

The parties waived a jury trial and the matter was tried to the court. With respect to the issues relevant to this appeal, the court rendered a judgment in Buttacavoli's favor. It found Rojas was liable to indemnify Buttacavoli and his wife based on an indemnification provision in the buy/sell agreement. With respect to Rojas's claims for breach of fiduciary duty and breach of contract, it found both failed because Buttacavoli had contributed at least $7,734,959.24, which is greater than the $6,981,785 Rojas claimed Buttacavoli had taken out of the dealership. The court stated, "Based on the evidence submitted, cross-complainant Steven Rojas failed to carry his burden of establishing any breach of contract and/or breach of fiduciary duty by cross-defendant Joseph Buttacavoli that resulted in any causally related damage to cross-complainant Steven Rojas." Rojas timely appealed.[2]

---

[1] This explanation leaves much to be desired, however, since Chrysler Financial Services, having approved of the sale, must have known Buttacavoli was to be paid $1.5 million.

[2] Buttacavoli also secured a judgment for $1 million against Fullerton Dodge. Fullerton Dodge did not appeal, however, and thus we do not address issues

6

DISCUSSION


Rojas's first argument on appeal is that the court incorrectly allocated to him the burden of proving Buttacavoli's breach of a fiduciary duty. We disagree.

In proving a claim for breach of fiduciary duty, "The beneficiary of the trust has the initial burden of proving the existence of a fiduciary duty and the trustee's failure to perform it; the burden then shifts to the trustee to justify its actions." (*LaMonte v. Sanwa Bank California* (1996) 45 Cal.App.4th 509, 517.) Once the burden has shifted, "the trustee must prove it acted with the utmost good faith toward the beneficiary and made full disclosure of all facts related to the transactions at issue." (*Van de Kamp v. Bank of America* (1988) 204 Cal.App.3d 819, 854.) We have found no case, nor has Rojas cited one, holding that the burden of proof shifts on the issue of causation and damages.

We need not address that issue, however, because this is not a case that turns on the burden of proof. In concluding Rojas had failed to prove causally related damages, the court cited specific evidence that Buttacavoli had loaned more money to the company than he had withdrawn. Thus, even if the burden of proof had shifted on the issue of causation and damages, Buttacavoli offered evidence to support his position, which the court credited. The real issue in this appeal is whether substantial evidence supports the court's finding. We turn to that next.

The court found Buttacavoli had made loans of at least $7,734,959.24 as compared to the $6,981,785 he had allegedly withdrawn. In support of the amount loaned, the court cited Buttacavoli's verified cross-complaint, Rojas's verified answer, and Exhibit 1009, which is a collection of business records from Fullerton Dodge showing receipts for money Buttacavoli had loaned. Buttacavoli's verified cross-

---

pertaining to that aspect of the judgment.

7

complaint claims to have made three different loans totaling $4,431,261.85 (plus additional unspecified loans). Rojas's answer admitted these loans.[3] Further, each of these three loans were corroborated by promissory notes entered into evidence. Exhibit 1009, the admissibility of which was stipulated, contains receipts showing Buttacavoli deposited a further sum of $3,499,697.86.[4] These amounts total $7,930,959.71.[5] Rojas claimed at trial that Buttacavoli withdrew $6,981,785. Thus, whatever the propriety of Buttacavoli's withdrawals, this evidence shows he deposited nearly $1,000,000 more than he took out.[6]

Rojas never addresses any of this evidence in his briefs and thus offers no argument concerning why it is not substantial evidence to rebut causation and damages. The best he offers is the comment that "Buttacavoli has not pointed to a cash infusion into the business corresponding with each of his 'loans,' and in fact the financials demonstrate that some of the 'loans' were not supported by cash." This appears to be a reference to the testimony of his expert. The court found the expert's testimony not credible, however, and that finding is supported by the record.

---

[3] We note that in a subsequent answer to an amended complaint, Rojas denied the validity of the same loans. Although the prior pleadings had been superseded as pleadings, they were, nonetheless, admissible evidence. (*Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 457 ["'superseded pleadings may be used at trial as admissions against interest; however, the party who made the pleadings must be allowed to explain the changes'"].)

[4] We have not counted a deposit of $344,000, which appears to already be accounted for in the loans mentioned in the verified cross-complaint.

[5] Our calculation is approximately $200,000 higher than the trial court's. We are unsure how the trial court reached its total, but the discrepancy makes no difference to the outcome of the appeal since any surplus in favor of Buttacavoli would undermine Rojas's damages claim.

[6] It is worth noting there is no evidence in the record that Rojas invested any money in the dealership at all, and Rojas does not claim he did.

8

Rojas's expert was on the stand for only a short time and produced a report that is nothing more than a series of spreadsheets. Despite his short time on the stand, however, he was amply impeached. To take a particularly relevant example, Rojas's expert testified he could not find support in the dealership's books and records for the approximate $1.5 million loan reflected in the demand note executed in March 2002. However, he later admitted he was not provided the dealership's financial records for *January through April 2002*, which would be the most likely place to find such support. The expert further admitted that if the financial records had supported the $1.5 million loan, even by his own calculations there would be a surplus in favor of Buttacavoli. The substantial evidence supporting the $1.5 million loan is that the demand note is *signed by Rojas*. The expert further acknowledged that he had not figured in a $250,000 loan Buttacavoli made that was supported by a cancelled check, and that he had been unaware of Buttacavoli's initial $111,000 investment, which was also not reflected in his calculations. The expert also admitted he had not reviewed any financial records prior to 2002, and thus did not know what investments or draws Buttacavoli may have made from the time he became a partner in 1993. In short, the court had ample bases to reject the expert's testimony.

Beyond the comment noted above, Rojas never directly addresses the damages issue at all, and thus offers no explanation for how he could be damaged when, at the end of the day, Buttacavoli left nearly $1 million in the dealership. Instead, he spends nearly his entire brief arguing that the distributions Buttacavoli took were unfair for one reason or another. That is all beside the point, however, since the court's finding of no causally related damages is supported by the record. (*LaMonte v. Sanwa Bank California, supra*, 45 Cal.App.4th at p. 517 ["In order to plead a cause of action for breach of fiduciary duty against a trustee, the plaintiff must show the existence of a

9

fiduciary relationship, its breach, and damage proximately caused by that breach; the absence of any one of these elements is fatal to the cause of action"].)[7]

Next Rojas claims Buttacavoli breached his fiduciary duty by selling a cell tower on behalf of Stone Properties LLC (the company holding title to the real estate on which the dealership was located) after he had divested himself of any interest in that company. This argument borders on frivolous. Rojas acknowledges that the court credited Buttacavoli's testimony on this issue. Buttacavoli testified that he negotiated the sale of the cell tower because Rojas specifically asked him to do it, and that he transmitted all of the proceeds to Fullerton Dodge for Rojas's benefit. Rojas contends this was a breach of fiduciary duty because the sale proceeds were initially wired to Buttacavoli's personal account, and only then did he pass along the proceeds to Fullerton Dodge (which Buttacavoli no longer owned) for Rojas's benefit. There is no contention, however, that he failed to pass along the full amount of the proceeds. We do not see an issue.

Rojas's final argument is that the trial court erred by not finding Buttacavoli had breached the warranty in the buy/sell agreement that the financial records accurately portrayed Fullerton Dodge's finances. Rojas's single page of briefing on this issue fails to point us to any particular material misrepresentations in the financial records. The single sentence in Rojas's opening brief devoted to this issue states, "Because, as explained above at length, Buttacavoli did not provide accurate financials in accord with either Section 3.7 or 3.9 of the Buy/Sell Agreement," he breached it. It is not our duty, however, to sift through the previous 41 pages of briefing to determine what might have been a material misrepresentation in the books and records. We also note that

---

[7]    We note that even if we were to credit Rojas the full $309,305 of operational losses allegedly passed from Tony B Suzuiki to Fullerton Dodge, there would still be a comfortable surplus in favor of Buttacavoli.

10

the Chrysler Financial Services audit specifically found "[t]he condition of the books and records are fair." We find no error.

DISPOSITION

The judgment is affirmed. Respondents shall recover their costs incurred on appeal.

IKOLA, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

THOMPSON, J.

11