Filed 9/25/23 Certified for Publication 10/5/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| ANEL PEREZ, | C092691 |
| Plaintiff and Appellant, | (Super. Ct. No. 34201600196960CUPOGDS) |
| v. | |
| GALT JOINT UNION ELEMENTARY SCHOOL DISTRICT, | |
| Defendant and Respondent. | |

SUMMARY OF THE APPEAL

Under the Workers' Compensation Act (Lab. Code, § 3200 et seq., the Act) the right to recover workers' compensation benefits is the sole remedy of an employee against an employer for an injury arising out of and in the course of employment (Lab. Code, §§ 3600, 3602; see also *Arriaga v. County of Alameda* (1995) 9 Cal.4th 1055, 1058-1059). Generally, a person "performing voluntary service[s] for a public agency . . . who does not receive remuneration for the services" is excluded from the definition

1

of "employee" under the Act. (Lab. Code, § 3352, subd. (a)(9).) However, under certain circumstances, usually upon the governing board's adoption of a resolution, volunteers of statutorily identified organizations can be deemed employees under the Act. (See, e.g., Lab. Code, §§ 3361.5-3364.7.) One such exception to the exclusion of volunteers from the definition is contained in Labor Code section 3364.5, and applies "upon the adoption of a resolution of the governing board of the school district" to "person[s] authorized by the governing board of a school district or the county superintendent of schools to perform volunteer services for the school district" who are injured "while engaged in the performance of any service under the direction and control of the governing board of the school district or the county superintendent." (Lab. Code, § 3364.5.)

Here, plaintiff and appellant Anel Perez filed a personal injury action against the defendant and respondent school district after she was seriously injured while volunteering at an elementary school event. Following a bench trial, the court entered judgment in favor of the district on the ground that a resolution passed under Labor Code section 3364.5 in 1968 by the "Governing Board of Galt Joint Union School District of Sacramento and San Joaquin Counties" for the "Galt Joint Union School District" converted plaintiff's status to that of an employee under the Act, rendering workers' compensation the sole and exclusive remedy to compensate plaintiff for her injuries.

On appeal, we consider what it means for a volunteer to be "authorized" and under the "direction and control" of the governing board or county superintendent under the statute. We also consider whether the resolution needed to be expressly made applicable to the "Galt Joint Union Elementary District" and passed by a governing board that specifically identified itself as the governing board of the "Galt Joint Union Elementary School District" in order for the resolution to apply to plaintiff. In relation to the second issue, plaintiff has asked us to decide if the defendant school district, which was sued and filed answers under the name "Galt Joint Union Elementary School District" should be

2

estopped under the doctrines of judicial admissions and from arguing the resolution applied to volunteers of the defendant district in 2015.

We affirm the trial court's judgment.

PRELIMINARY MATTERS

Before we begin our analysis, we offer an explanation as to how we refer to the district throughout this decision, and we rule on one undecided motion and two requests for judicial notice filed in this appeal upon which we deferred rulings. We also offer a brief note regarding our treatment of some of the facts and issues raised in the briefs.

One of the issues that arose at trial was whether the defendant school district should be referred to as the Galt Joint Union *Elementary* School District, or the Galt Joint Union School District and/or whether the board of the Galt Joint Union School District could pass a resolution that applied to the Galt Joint Union *Elementary* School District. Though we conclude the trial court correctly determined that the evidence admitted at trial supports that the two names refer to one and the same district, throughout this decision we will refer to the defendant as "the defendant" or "the district," and we will avoid using the two names unless necessary in referring to the evidence regarding the district's name or to how the parties refer to the district in the pleadings in this matter.

The defendant requested judicial notice of an analysis prepared by the staff of the Senate Local Government Committee regarding Senate Bill No. 336 (1967 Reg. Sess.) (Senate Bill 336). Defendant attached a copy of the subject report to its request. Plaintiff did not oppose defendant's request. Legislative committee reports and analyses are properly subject to judicial notice. (See *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 32.) We grant defendant's request.

The plaintiff requested judicial notice of a petition to stay proceedings that she filed before the Workers' Compensation Appeals Board (WCAB) and the WCAB's order

3

staying those proceedings.  These materials were offered to support an argument that plaintiff made in reply to defendant's argument that she should be estopped from disputing the exclusive jurisdiction of the WCAB.  Defendant opposed plaintiff's request and filed a motion to strike the portion of plaintiff's reply brief that relies on the documents.  Because, when considering the merits of both parties' arguments, we find the trial court correctly concluded the WCAB has exclusive jurisdiction, a finding as to whether plaintiff ought to be estopped from arguing WCAB does not have exclusive jurisdiction would not change our final decision.  Accordingly, we deny both plaintiff's request and defendant's motion because they have no impact on the disposition of this appeal.  Similarly, we note that when and how a workers' compensation claim was filed on plaintiff's behalf, and whether benefits have been paid under that claim does not affect our decision here.  Plaintiff did not need to have notice of the resolution nor to opt to be treated as an employee under the Act in order to be deemed an employee subject to workers' compensation's exclusive remedies once the district's board adopted a controlling resolution.  (See *Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 468.)  Thus, we do not consider the evidence in the record regarding whether plaintiff personally made a claim for benefits or accepted workers' compensation payments.

FACTS AND HISTORY OF THE PROCEEDINGS

The Pleadings

In July 2016, plaintiff filed an unverified complaint in the Superior Court in Sacramento County alleging personal injury.  Plaintiff named Galt Joint Union Elementary School District as the defendant.

According to the complaint, on December 4, 2015, plaintiff was acting as a volunteer for the spelling bee held at River Oaks Elementary School, which is owned or in the possession of the Galt Joint Union Elementary School District.  The complaint alleges that while attending the event, plaintiff fell off the school's auditorium stage and

4

down an adjacent stairway, causing catastrophic injury to her. Plaintiff alleged economic and noneconomic damages.

Defendant filed an answer in November 2016. In the introductory paragraph of the answer, defendant wrote, "COMES NOW Defendant GALT JOINT UNION ELEMENTARY SCHOOL DISTRICT, a public entity, and answering the Complaint of Plaintiffs on file herein, admits, denies and alleges as follows." The answer then contained a general denial under Code of Civil Procedure section 431.30, subdivision (d), in which the defendant generally and specifically denied each and every allegation and cause of action contained in the complaint, and in which defendant denied plaintiff was entitled to damages due to any wrongful act by the defendant. The answer then alleged various affirmative defenses. The affirmative defenses in this initial answer did not include anything regarding the availability of workers' compensation coverage.

In late 2018, the defendant filed a successful motion for leave to amend its answer to the complaint which added an affirmative defense labeled "EXCLUSIVE REMEDY." It says, "[a]s a separate, further and affirmative defense, this answering defendant alleges plaintiff is barred and precluded from recovery herein by Labor Code sections 3600 and 3602 in that the exclusive remedy against this answering defendant, if any, is that provided by the California Labor Code, Division 4."

Bifurcation of Issues and Phase One Trial

The defendant filed a motion to bifurcate the trial. The motion proposed phase one would address if a resolution adopted under Labor Code section 3364.5 applied to defendant, such that plaintiff's sole and exclusive remedy would be the defendant's workers' compensation. The trial court granted the motion. The two-day phase one bench trial took place in January 2020.

5

<u>Testimony</u> <u>and</u> <u>Evidence</u> <u>Presented</u> <u>by</u> <u>the</u> <u>District's</u> <u>Superintendent</u>

The defense called Dr. Karen Schauer, who testified that she was the superintendent of the "Galt Joint Union Elementary School District." She had worked for the district since 1980, in various capacities, beginning as a teacher. Schauer's testimony and the evidence she presented touched on three key issues: the 1968 adoption of a resolution pursuant to Labor Code section 3364.5 by the governing board of the "Galt Joint Union School District," the names by which the district identifies itself, and her use of school principals as her designees.

Part of Schauer's testimony with respect to the first and second key issues involved the authentication of district records, including board minutes and the Labor Code section 3364.5 resolution at issue here. Schauer described the process of recording and verifying the content of board meeting minutes. She stated final minutes are kept in the district office in a fireproof safe. The defense brought copies of minutes from district archives dating back to 1952 to trial. Schauer stated district resolutions will also be archived, but not necessarily stored with the minutes. When asked if the district office where she works would "maintain the board minutes or resolutions for any other school district other than the Galt Joint Union Elementary School District" she responded, "[n]o."

Schauer's testimony on the three key topics is summarized here.

<u>Evidence</u> <u>Regarding</u> <u>the</u> <u>Labor</u> <u>Code</u> <u>section</u> <u>3364.5</u> <u>Resolution</u>

Schauer testified about board minutes from the March 18, 1968, board meeting. According to the header of those minutes, the name of the school district whose governing board held a meeting that day was the "Galt Joint Union School District." The members of the governing board identified in the minutes included Donald F. Nottoli. Schauer knew Nottoli from working with the district. He was on the governing board of the district for years--until he retired in the 2000's. As far as Schauer knew, Nottoli

6

never served on the governing board of any district other than the defendant district.  The minutes reflect that at the meeting, the board unanimously voted to approve Resolution No. 37, "which provides for compensation insurance coverage for persons authorized to perform volunteer services for the district."

Schauer also testified about Resolution No. 37.  According to the resolution, on March 18, 1968, the "Governing Board of Galt Joint Union School District of Sacramento and San Joaquin Counties" adopted the resolution.  Resolution No. 37 states the "Governing Board of the Galt Joint Union School District desire[d] to avail itself of the opportunity to provide" the coverage outlined in Labor Code section 3364.5.  It resolved "that authorized, unsalaried volunteers are hereby deemed to be employees of the Galt Joint Union School District for workmen's compensation insurance purposes." The resolution was signed by Donald F. Nottoli, whose title was Clerk of the Board.

It was Schauer's understanding that Resolution No. 37 was passed on behalf of the district for which she worked.  She understood this to be true because it was signed by Donald Nottoli, and it contained the "name of our district, Galt Joint Union School District" within the resolution.  She understands both "Galt Joint Union School District" and "Galt Joint Union School District of Sacramento and San Joaquin Counties" to refer to the district for which she works, the "Galt Joint Union Elementary School District." She agreed the governing board that identified itself as serving Galt Joint Union School District of Sacramento and San Joaquin Counties and Galt Joint Union School District was the same entity as the governing board of the Galt Joint Union Elementary School District.

Schauer stated she was not aware of the existence of Resolution No. 37 before the date of plaintiff's accident.

7

<u>Evidence</u> <u>Regarding</u> <u>the</u> <u>Name</u> <u>of</u> <u>the</u> <u>District</u>

Schauer testified that the names "Galt Joint Union School District, Galt Joint Union Elementary District, and Galt Joint Union School District of Sacramento and San Joaquin Counties" all refer to the district for which she works, and the governing board of the district would refer to itself using the various iterations of the district's name.

Schauer identified many documents that reflected the district sometimes being referred to as "Galt Joint Union Elementary" or "Galt Joint Union Elementary School District," and at other times being referred to as "Galt Joint Union School District." For example, she described a 2016 W-2 form that identified the employer as "Galt Joint Union Elementary," a 1973 Registration for Tax-Free Identification registering the "Galt Joint Union School District," and a 2009 information return for tax-exempt governmental obligations issued by the "Galt Joint Union School District" which each used the same unique employer identification number (EIN) to identify the respective employer, registrant, and issuer. Addresses listed on the 1973 and 2009 documents were for buildings where Schauer had worked in her capacity as a district employee, and they were signed by persons she recognized as former district administrators.

Schauer also identified an indirect costs allocation plan for the "Galt Joint Union School District" and a California Department of Education listing for the "Galt Joint Union Elementary" school district that both identify the referenced districts using the same county district school (CDS) number, which she recognized as being the CDS number for the district where she works and a number she said she had never seen used for any other district.

Schauer reviewed copies of minutes of the governing board from district archives going back many years including: minutes from a 1959 meeting of the governing board of the "Galt Joint Union School District" on which she recognized one listed board member who was a member of the governing board of the district at which she works

8

when she began working for the district and another as a person who has a school in the district named after him; meeting minutes from the April, May, June, and July meetings in 1998, which alternatingly are labeled as the meeting minutes for the board of the "Galt Joint Union School District" and the "Galt Joint Union Elementary District."

Schauer looked at board minutes from June 26, 2001. Nottoli is identified as a board member at the meeting. The minutes identify the district as "Galt Joint Union Elementary School District." A resolution was passed at the meeting to acquire real property for a middle school. She also looked at the grant deed for the property, which was recorded on July 13, 2001. The grantee is listed as "Galt Joint Union School District." The deed also identifies the district requesting the recording and to which a copy should be mailed following recording as "Galt Joint Union School District." It is her understanding that the "Galt Joint Union Elementary School District" owned the property.

Schauer also testified to a statement of facts prepared and filed with the California Secretary of State in December 2000. Jeff Jennings, who was the superintendent of the district for which she works in December 2000 signed the statement. It identifies the "Galt Joint Union Elementary School District" as the legal name of the district. Donald Nottoli is identified as a board member on the document. She understands the Donald Nottoli listed to be the same one she worked with and the same one who executed Resolution No. 37. On cross-examination, Schauer acknowledged that a statement of facts, in part, serves as a means for a school district to file its name with the California Secretary of State, in order to provide a legal way to identify the district filing the statement.

Schauer admitted that she represents to the general public that the name of the district is "Galt Joint Union Elementary School District." Schauer agreed it was reasonable for plaintiff to believe she was volunteering for the "Galt Joint Union Elementary School District."

9

Schauer explained why the district has come to use both the name "Galt Joint Union School District" and "Galt Joint Union Elementary School District" to identify itself. She said, "in a community with two school districts," the other of which is called the Galt Joint Union *High* School District, "when it comes to communicating the name of the school district" to identify the elementary district only "Galt Joint Union School District is not necessarily clear that it's an elementary district. So . . . there's so many different organizations or agencies that we prepare information for and what they require in terms of the name of the school district may vary but the ID numbers are the same."

<u>Testimony</u> <u>Regarding</u> <u>Using</u> <u>Principals</u> <u>as</u> <u>Designees</u>

Schauer testified that she understands the governing board grants her authority to direct and control volunteers in the district and she, in turn, can delegate the direction and control to school administrators. From a practical standpoint, the governing board could not provide direct oversight of events at schools like spelling bees. They are not present during the school day, and oversight requires being able to provide redirection and the board is not on site at schools to do that. If an event is happening at a school where her job duties do not include providing direct oversight, she delegates that power. At River Oaks Elementary School, Schauer typically delegates that power to the principal, who was Lois Yount in 2015. She delegated that power to Yount pursuant to board policies and administrative regulations. Schauer hired Yount as the principal.

According to Schauer, the governing board has the authority to prohibit events like spelling bees. The governing board knows about the spelling bees for the most part, because they have been going on for years, and she believes a board member has even judged one at River Oaks. Monthly calendars with scheduled events are included in board information packets, and she would expect to see school spelling bees listed on those.

10

Schauer testified Yount had the authority to control the spelling bee set up, including the seating of volunteers, placement of tables, and where students would stand during the bee. In turn, Schauer could have given directives on those topics to Yount and had Yount act on those directives, pursuant to authority given to Schauer through district policies and administrative regulations. Furthermore, the board could vote to change the policy to modify the direction and control Schauer has over volunteers, and Schauer and Yount would follow that policy.

Schauer testified about Megan's Law clearance forms. District volunteers need to fill out a Megan's Law clearance form each year before working with children.

If Schauer had any reason to prohibit plaintiff from volunteering at the spelling bee, she could have done so. Likewise, as Schauer's designee, Yount could have prohibited plaintiff from volunteering if Yount had discovered plaintiff had not obtained Megan's Law clearance. According to a compliance report to which the district has access, plaintiff had obtained Megan's Law clearance on October 22, 2015, before the spelling bee. When asked if she had any control over plaintiff's activities, Schauer said the control aspect would be related to what it takes to participate in a district event at the school "and that control would mean she needed to have Megan's Law completed and that needed to happen for her to volunteer."

Schauer admitted she was not personally at the spelling bee. She did not personally give any direction to plaintiff at the spelling bee. Schauer was not aware of anyone from the board giving any direction to plaintiff when she volunteered for the spelling bee.

Testimony of Anel Perez

The defendants called plaintiff.

11

Plaintiff testified she had two children who attended River Oaks Elementary at the time of the accident, and she was a frequent volunteer at the school. She was vice president of the PTA.

Plaintiff testified that the PTA president asked her to volunteer at the bee the day before the event. When plaintiff arrived for the bee, she connected with Yount. Yount gave plaintiff the judge's packet. Yount gave plaintiff insight and instruction on what she expected from plaintiff as a judge. Yount told plaintiff to listen carefully, and if there was a question or dispute about how a student spelled something, the judges would confer. The judges' table was set up on stage and Yount told plaintiff where to sit at the table. During the bee, plaintiff's chair went backwards off the edge of the stage and she was injured.

Plaintiff agreed that during the time of the spelling bee and before her fall, she "understood that [she] w[as] under the direction and control of Ms. Yount who was in essence running the spelling bee."

Testimony of Lois Yount

The defense called Yount. Pertinent points of her testimony were as follows:

She has worked for "Galt Joint Union Elementary School District" for 20 years. She used to work as a school administrator at River Oaks Elementary. As a school administrator, she would oversee every aspect of the school, including student safety and staff safety, day-to-day happenings, and school functions. She would serve as a leader of instruction, maintenance, and operation. Her direct supervisor, with whom she would communicate on an on-going basis, was the district superintendent. The superintendent works under the board to make sure employees follow its policies and administrative regulations. The board makes policies and administrative regulations and has the ultimate authority to implement what needs to be done.

12

There is a school calendar that she knows goes up to the board which would include the date of the annual spelling bee at the school.

The board makes the policies school administrators need to follow. The board provides oversight to individual schools with their voting power. That voting power relates to the direction and control of volunteers in the district. She understands that the board has a policy that grants authority to the superintendent to direct and control volunteers. Those polices and administrative regulations also allow the superintendent to delegate direction and control over volunteers to school administrators. Regular visitors who are not volunteering on campus--maybe who do a quick visit--have to sign in and get a visitor's badge, but they do not have to go through the Megan's Law clearance.

She was principal of River Oaks on December 4, 2015. She knew plaintiff as a parent, and as a recognizable face on campus. Yount testified that plaintiff volunteered regularly.

Yount met with plaintiff the morning of the bee. The PTA president had informed Yount she was not able to volunteer and had asked plaintiff to take her place. Yount and plaintiff met in the multipurpose room before the bee started. She showed plaintiff where the judging table was, gave her a packet, and showed her where some things were on the table. The packet contained the rules of the spelling bee and had judging instructions. She told plaintiff her job was to listen to the students spell the words and use her list to determine if the child spelled the word correctly. She agreed her contact with plaintiff that morning was "extremely brief."

Yount's power to direct and control the spelling bee the day of the accident came from the administrative regulations and board policies from the governing board, and from the district superintendent. She has to approve spelling bee judges. While the PTA president did not need to ask Yount before she asked plaintiff to judge, if the PTA president asked someone who had not cleared Megan's Law or who Yount thought would not represent the school properly, Yount would not have let that person volunteer. If it

13

was a parent Yount did not know or who had not cleared Megan's Law, Yount would have told the president to find someone else.

The spelling bee at River Oaks goes back at least as far as 2000. It was common for governing board members to serve as judges at the bees.

In working for the district, Yount has heard the district referred to by different names. Those include Galt Joint Union School District, Galt Joint Union Elementary School District, Galt School District, and Galt Elementary School District and all those names refer to the district for which she works. She would not be surprised if someone referred to the district for which she works as "Galt Joint Union School District" because over the years she has heard the district referred to in different ways.

Plaintiff's counsel read from a deposition transcript in which Yount, when asked if she gave plaintiff instructions on how to conduct herself at the bee, responded, "[n]o, she asked me what her role would be, and I said her role would be to listen to the words, that was it. Very little direction was given."

When asked if plaintiff was under a particular person's direction the day of the bee, Yount said plaintiff was under the direction of the school, then added, "I think that would be me as principal." Plaintiff's counsel then read from Yount's deposition, where, when asked, "[w]as [plaintiff] under any particular person's direction that day?" Yount responded, "[n]o." He also read from Yount's deposition where, when asked if anyone gave plaintiff instructions on how to act as a judge, Yount responded, "[n]obody did that I'm aware of."

Interrogatories Read into Evidence

At the trial, plaintiff's counsel read interrogatory responses into the record: "Special Interrogatory No. 37 asks, identify the name, address, title, if applicable, and telephone number of each person and/or entity under whose direction pursuant to Labor Code Section 3364.5. Plaintiff Anel Perez was acting while she was judging the spelling

14

bee that took place at River Oaks Elementary School on December 4th, 2015.  The response, as verified by Mr. Barentson is, as a judge at the spelling bee, plaintiff would not be under the direction of a particular person or entity dependent upon the definition of direction.  The spelling bee committee, the principal and assistant principal were in charge of running the spelling bee at River Oaks Elementary School on December 4th, 2015.

"And then in a similar Interrogatory No. 38 was asked with regard to the question of control.  And the interrogatory reads, identify the name, address, title, if applicable, and telephone number of each person and/or entity under whose control, pursuant to Labor Code Section 3364.5.  Plaintiff Anel Perez was acting while she was judging the spelling bee that took place at River Oaks Elementary School on December 4th, 2015.  [¶]  The Special Interrogatory No. 38 response verified by Mr. Barentson reads, as a judge at the spelling bee, plaintiff would not be under the control of a particular person or entity dependent upon the definition of control.  The spelling bee committee, the principal and assistant principal were in charge of running the spelling bee at River Oaks Elementary School on December 4th, 2015."

### Dr. Donald Nottoli Stipulation

The parties agreed that the court could consider that if Dr. Donald Nottoli--the son of the Mr. Donald F. Nottoli who signed Resolution No. 37--testified at trial, he would have said he joined the district's board in 1977, and when he joined the board there were two school districts in Galt: one for high school and one for elementary.  He would also say that during his time the elementary district was referred to as both Galt Joint Unified School District and Galt Joint Union Elementary School.

### Proceedings After Close of Evidence, Judgment, and Notice of Appeal

Following the close of evidence, the parties submitted posttrial briefs.  The court issued a tentative ruling in defendant's favor and provided the parties the opportunity to

15

discuss the tentative ruling at a hearing before entering a final judgment. After the court heard arguments, it adopted and affirmed the tentative ruling.

Judgment in defendant's favor was entered on June 26, 2020. Plaintiff filed and served a timely notice of appeal on August 28, 2020.

DISCUSSION

I

*Authorization, Direction, and Control Under Labor Code Section 3364.5*

Plaintiff argues that because there was no evidence the district board members were aware of their duties under Labor Code section 3364.5 when she was injured, none of the members were present at the bee, and there is no evidence they knew about the bee, she was not "authorized by the governing board" to act as a volunteer, and she was not performing services under their "direction and control" at the time she was injured. Thus, plaintiff reasons, the trial court should have rejected the defendant's affirmative defense that she was covered by the Act and, therefore, that workers' compensation provided her exclusive remedy.

A. Standards of Review

To the extent evaluating this argument requires us to determine whether Labor Code section 3364.5 only applies when (1) district board members and employees are aware of its application when a volunteer is injured; (2) district board members know about and authorize a specific volunteer's involvement in a specific activity; and/or (3) district board members directly control and supervise a volunteer's actions, we consider the question de novo. (*Lopez v. Ledesma* (2022) 12 Cal.5th 848, 857.) To the extent it requires us to determine, given our resolution of the foregoing, whether plaintiff was authorized to act as a volunteer and acted under the direction and control of the board in this instance, we ask if that determination was supported by substantial evidence.

16

(*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632 ["When the trial court has resolved a disputed factual issue, the appellate courts review the ruling according to the substantial evidence rule. If the trial court's resolution of the factual issue is supported by substantial evidence, it must be affirmed"].)

B.     Meaning of the Statute

" 'In construing a statute, " 'we strive to ascertain and effectuate the Legislature's intent.' [Citations.] Because statutory language 'generally provide[s] the most reliable indicator' of that intent [citations], we turn to the words themselves, giving them their 'usual and ordinary meanings' and construing them in context. . . ." (*People v. Castenada* (2000) 23 Cal.4th 743, 746-747 . . . .) "If the language contains no ambiguity, we presume the Legislature meant what it said, and the plain meaning of the statute governs." (*People v. Robles* (2000) 23 Cal.4th 1106, 1111 . . . .) If, however, the statutory language is susceptible of more than one reasonable construction, we can look to legislative history (*ibid.*) and to rules or maxims of construction (*Mejia v. Reed* (2003) 31 Cal.4th 657, 663 . . . .) "[T]he court may [also] consider the impact of an interpretation on public policy, for '[w]here uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation.' " (*Ibid.*, quoting *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 . . . .)' (*People v. Smith* (2004) 32 Cal.4th 792, 797-798 . . . .)" (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 426.)

Our Supreme Court has discussed, with respect to determining coverage under the Act, the necessity of complying with "the Legislature's command in [Labor Code] section 3202 that the Act 'be liberally construed by the courts with the purpose of extending [its] benefits for the protection of persons injured in the course of their employment.' [] This command governs all aspects of workers' compensation; it applies to factual as well as statutory construction. [Citations.] Thus, '[i]f a provision in [the

17

Act] may be reasonably construed to provide coverage or payments, that construction should usually be adopted even if another reasonable construction is possible.' [Citation.] The rule of liberal construction 'is not altered because a plaintiff believes that [she] can establish negligence on the part of [her] employer and brings a civil suit for damages.' [Citation.] It requires that we liberally construe the Act 'in favor of *awarding work[ers'] compensation*, not in permitting civil litigation. [Citation.]' [Citations.]" (*Arriaga v. County of Alameda*, *supra*, 9 Cal.4th at p. 1065.)

Applying these principles, we conclude (1) that so long as a resolution has been passed at some point by the governing board of a district and not later rescinded, Labor Code section 3364.5 does not require that district board members and staff be aware of the statute at the time a volunteer is injured in order for it to apply; (2) district board members do not need to know about and authorize a specific volunteer's involvement in a specific activity for the exception to apply; and (3) district board members do not need to directly control and direct a volunteer's actions for the exception to apply.

As to our first conclusion, the statute says it applies to subject school district volunteers, "upon the adoption of a resolution of the governing board of the school district." (Lab. Code, § 3364.5.) Interpreting the statute to require that every future board member knows of Labor Code section 3364.5 and a resolution passed within the meaning of that statute reads requirements into the statute that are not in the statute's text. This runs contrary to the rule of statutory construction that we do not add words to a statute. (See *B.B. v. County of Los Angeles* (2020) 10 Cal.5th 1, 9; see also Code Civ. Proc., § 1858 ["In the construction of a statute or instrument, the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all"].) Moreover that interpretation of the statute potentially narrows the scope of persons to whom the statutory exception can apply contrary to Labor Code

18

section 3202's command that we "liberally construe[]" sections of the Act to extend "their benefits for the protection of persons injured in the course of their employment."

As to our second conclusion, to interpret the phrase "person[s] authorized by the governing board of a school district or the county superintendent of schools to perform volunteer services for the school district" to apply only to persons who have been specifically authorized by the board to volunteer at specific events is also outside the reach of the statute. (See *Minish v. Hanuman Fellowship, supra*, (2013) 214 Cal.App.4th at pp. 465-466 [rejecting an argument that specific volunteers needed to be identified by the governing board of nonprofits under a similar statute, Lab. Code, § 3363.6].) An equally sensible reading of the term "authorized by the governing board" is to interpret it as applying to the class of persons the board authorizes to perform volunteer services at the type of activities it authorizes vis-à-vis its policies and regulations.

As to our third conclusion, to interpret the phrase under the "direction and control of the governing board of the school district or the county superintendent" to mean the board would literally need to directly direct and control a volunteer's activities before the exception could apply is nowhere found in the statute. A proper reading of the language of the statute, which is more in keeping with Labor Code section 3202's directive, is that it applies to a volunteer performing services under the supervision of an authorized board or county superintendent designee who is abiding by the rules, policies, and regulations developed by the board and exercising that supervision pursuant to authority granted by the board.

This interpretation of the statute is further supported by the legislative history of Labor Code section 3364.5. This history shows that the purpose of its enactment was to enable school districts to provide workers' compensation coverage for the increasing number of school volunteers. A senate staff analysis described the problem addressed by Senate Bill 336 as follows: "Increasing use is being made of volunteer assistance by numerous school districts--such as under the compensatory programs . . . and general

19

school assistance . . . . As volunteers, they are neither compensated nor covered by insurance." (Sen. Local Gov. Com., staff analysis of Sen. Bill No. 336 (1967 Reg. Sess.), as amended Apr. 13, 1967.) The staff analysis further noted that the proposed legislation would "provide that a school district board may provide personal liability and workmans['] compensation insurance for a volunteer, the same as or comparable to that provided for its regular employees." (*Ibid.*) Examples of the growing class of volunteers included, "tutors, librarian aides, playground monitors, etc." and "aides for handicapped, teacher aides, etc." (*Ibid.*)

The broad purpose of Labor Code section 3364.5, reflected in the legislative history, reinforces our decision that the statute does not apply just in the narrow circumstances and to the narrow class of volunteers to which plaintiff's reading would have us apply the statute. To adopt plaintiff's proposed interpretation would thwart a district's ability to provide workers' compensation coverage to the range of school volunteers identified in the staff report, given the obvious impracticability of such a requirement. (See *Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [we select statutory construction that comports most closely with apparent intent of Legislature, " ' "with a view to promoting rather than defeating the general purpose of the statute" ' "]; *Spier v. Peck* (1918) 36 Cal.App. 4, 6 ["Statutes are to be so construed as not to give rise to an absurdity in their attempted application and as not to destroy their efficacy as a whole or in substantial part"].)

Thus we reject plaintiff's reading of the statute at issue.

C.    Substantial Evidence Supports the Trial Court's Findings

The substantial evidence standard, "has three pillars. First, we accept all evidence supporting the trial court's order. Second, we completely disregard contrary evidence. Third, we draw all reasonable inferences to affirm the trial court. These three pillars support the lintel: we do not reweigh the evidence. (See *Harley-Davidson, Inc. v.*

20

*Franchise Tax Bd.* (2015) 237 Cal.App.4th 193, 213-214 . . . .) Under this standard of review, parties challenging a trial court's factfinding bear an ' "enormous burden" ' (*People v. Thomas* (2017) 15 Cal.App.5th 1063, 1071 . . . .)" (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 581-582, as modified on den. of rehg. (Feb. 14, 2020).) Considering the manner in which we have interpreted Labor Code section 3364.5 here, plaintiff cannot meet this burden.

First, the governing board of the district adopted a Labor Code section 3364.5 resolution, Resolution No. 37, in 1968, and there is no suggestion that the resolution has been rescinded since then. That the superintendent and possibly the current board members were not individually aware of the resolution and its implications under Labor Code section 3364.5 does not change this fact.

Second, the evidence supports a finding that the plaintiff had been "authorized by the governing board of [the] school district" to perform volunteer services when she was serving as a volunteer at the spelling bee. As reflected in district records, she had satisfied a central district requirement for the authorization of district volunteers: she had obtained Megan's Law clearance. The board's designee, Schauer, and Schauer's designee pursuant to board authorization, Yount, could have prevented plaintiff from volunteering at the event. In short, plaintiff's authority to serve as a volunteer was given because she satisfied the district's policies regarding its volunteers, and the superintendent and her designee--who had a better capacity to observe volunteers in the day-to-day school environment--could have revoked that authorization based on variables they might have observed. Additionally, evidence supported a conclusion that the governing board was aware that spelling bees were held at River Oaks, likely was given a calendar that stated when this particular spelling bee would be held, and the board could have removed the authority for the school to host the bee.

Finally, evidence supports a finding that the spelling bee on December 4, 2015, in general, and plaintiff's judging activities specifically were under the direction and control

21

of Yount, who, as principal, was acting for Schauer with respect to daily operations at River Oaks. Yount's and plaintiff's testimony establish that Yount told plaintiff where to sit and provided plaintiff instructions on how to judge the spelling bee. Schauer's testimony established that Yount had the authority to control and direct the spelling bee set up, including the seating of volunteers, placement of tables, and where students would stand during the bee based on authority established by the board.

The fact that Yount's responses during her deposition may have suggested that plaintiff was not under any one person's control during the spelling bee does not require a finding that plaintiff was not under Yount's direction and control. As the trier of fact, the trial judge was permitted to weigh the deposition responses against Yount's, plaintiff's, and Schauer's testimony. (See *Mardirossian & Associates, Inc. v. Ersoff* (2007) 153 Cal.App.4th 257, 271 [stating that even if a witness's deposition testimony had been "inconsistent with his trial testimony" it was proper for the trial court to conclude "such inconsistency was to be evaluated by the trier of fact." "Trial testimony may be impeached by inconsistent deposition testimony, but absent an abuse of the discovery process, such testimony should not be precluded"].)

Likewise, the district's responses to interrogatories numbered 37 and 38 do not dictate that we reach a different conclusion. As the trial court observed, "[d]efendant's actual responses to these interrogatories were not unequivocal denials" and reflect that a complete response would turn on a precise definitions of "control" and "direction" which the plaintiff never attempted to define.

II

*The Resolution Applies to the District*

A. <u>Scope</u> <u>of</u> <u>the</u> <u>Issue</u>

Before we address plaintiff's argument regarding the name of the district, we offer a note on its scope. In so doing, we consider some basic rules governing appellate

22

briefing. " '[E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration. [Citations.]' (9 Witkin, Cal. Procedure, (3d ed. 1985) Appeal, § 479, p. 469; see also *People v. Ashmus* (1991) 54 Cal. 3d 932, 985, fn. 15 . . . ; *Duncan v. Ramish* (1904) 142 Cal. 686, 689-690 . . . .)" (*People v. Stanley* (1995) 10 Cal.4th 764, 793; accord, *Bettencourt v. City and County of San Francisco* (2007) 146 Cal.App.4th 1090, 1102; see also *Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6 ["Issues not raised in an appellant's brief are deemed waived or abandoned. (*Tan v. California Fed. Sav. & Loan Assn.* (1983) 140 Cal.App.3d 800, 811 . . . .]".) Additionally, "[e]ach brief must: [¶] [s]tate each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority." (Cal. Rules of Court, rule 8.204(a)(1)(B).) Arguments that fail to satisfy this rule are forfeited. (*Consolidated Irrigation Dist. v. City of Selma* (2012) 204 Cal.App.4th 187, 201.)

Based on the headings contained in plaintiff's opening brief, plaintiff's argument regarding the name of the district is as follows: defendant was barred by judicial admissions from claiming that its name has ever been anything but Galt Joint Union Elementary District. Plaintiff preserved this issue by raising it below, and she has been prejudiced by the trial court's rulings regarding names. One of plaintiff's headings regarding the question of the district's name also suggests she has either taken the position that the governing board that passed the resolution was not the governing board of the defendant district or that Resolution No. 37 needs to contain the exact name of district used today in order to apply. Though this position is not well-developed and supported, we can dispose of it quickly on the merits.

B.      The Pleadings Did Not Prevent Defendant from Relying on the Resolution

" 'A judicial admission is a party's unequivocal concession of the truth of a matter, and removes the matter as an issue in the case. [Citations.]' (*Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 48 . . . .) 'Judicial admissions may be made in a pleading . . . . [Citations.] Facts established by pleadings as judicial admissions " 'are conclusive concessions of the truth of those matters, are effectively removed as issues from the litigation, and may not be contradicted, by the party whose pleadings are used against him or her.' [Citations.] ' "[A] pleader cannot blow hot and cold as to the facts positively stated." ' [Citation]" [Citation.]' (*Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 746 . . . .)" (*Minish v. Hanuman Fellowship, supra*, 214 Cal.App.4th at p. 456.)

Here, while the district did file answers as "Galt Joint Unified Elementary School District" the answer and amended answer contain no express admissions of fact. The answers do not "positively state[]," or even imply, that in the course of over 50 years the district has never gone by any other name, or that the district even currently only operates under one name. Thus, plaintiff has failed to persuade us that defendant must be foreclosed from claiming it is the district whose governing board identified as the governing board of "Galt Joint Union School District" on March 18, 1968, and passed Resolution No. 37.

C.      Governing Board's Adoption of the Resolution

The trial court concluded the evidence shows the defendant's governing board adopted the resolution. This is a finding of fact that we review under the substantial evidence standard. (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632 ["When the trial court has resolved a disputed factual issue, the appellate courts review the ruling according to the substantial evidence rule. If the trial court's resolution of the factual issue is supported by substantial evidence, it must be affirmed"].)

24

The record amply supports a finding that the governing board that passed Resolution No. 37 is the governing board of the defendant district. Schauer's testimony regarding the use of "Galt Joint Union School District" and "Galt Joint Union Elementary District" and her review of numerous district documents that use the two names interchangeably--some of which also reflect how the unique EIN and CDS identifiers have been used on documents identifying the district under both names--support the finding that the two names refer to one and the same district. Additionally, according to Schauer, the board representative that signed Resolution No. 37 only ever served on the board of one district, which is the one that is sometimes called "Galt Joint Union District" and other times called "Galt Joint Union Elementary District"; i.e., the defendant district.

The trial court's factual determination that the district's governing board passed Resolution No. 37 is sound.

### D.     The Resolution Need Not Use a Specific District Name

The governing board was not required to refer to the district as "Galt Joint Union Elementary School District" for the resolution to apply. Applying de novo review and the principles of statutory construction articulated above (see section I.B., *ante*) we find that Labor Code section 3364.5 does not require a resolution passed pursuant to the statute to use the precise name of the district for the resolution to apply. The statute contains no such language requiring the precise use of a district name, and we would needlessly narrow the scope of the exception's coverage if we were to read that requirement into the statute. As this case demonstrates, it is possible that, over time, a district's name might change or evolve to better reflect the community it serves. To require a new resolution be adopted with each potential name change, when the governing body of the district and the core district remains unchanged, would create a rule where numerous persons who would otherwise be covered by the exception would become inadvertently excluded.

25

## DISPOSITION

The judgment is affirmed.  Defendant shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.27(a)(1), (2).)

                                       _____

                                       HULL, Acting P. J.

We concur:

_____

ROBIE, J.

_____

MAURO, J.

26

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| ANEL PEREZ, | C092691 |
| Plaintiff and Appellant, | (Super. Ct. No. 34201600196960CUPOGDS) |
| v. | |
| GALT JOINT UNION ELEMENTARY SCHOOL DISTRICT, | ORDER CERTIFYING OPINON FOR PUBLICATON |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Gerrit W. Wood, J.  Affirmed.

Fielder Fielder & Fielder and Scott L. Fielder for Plaintiff and Appellant.

Horvitz & Levy, Steven Samuel Fleischman and Scott P. Dixler; Schuering Zimmerman & Doyle, Robert H. Zimmerman and Denise Jarman for Defendant and Respondent.

1

THE COURT:

The opinion in the above-entitled matter filed on September 25, 2023, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.


BY THE COURT:


_____

HULL, Acting P. J.



_____

ROBIE, J.



_____

MAURO, J.